MONTIEL, Judge.
James Larry Branum and Tobi Carol Lambeth were both indicted for first degree burglary, in violation of § 13A-7-5, Code of Alabama 1975, first degree robbery, in violation of § 13A-8-41, Code of Alabama 1975, and first degree theft, in violation of § 13A-8-3, Code of Alabama 1975. Each offense was charged in a separate indictment. The appellants were found guilty as charged in the indictments after a consolidated trial. Branum was sentenced to 25 years in prison for the robbery conviction, 15 years for the burglary conviction and 15 years for the theft conviction, the sentences to run concurrently. Lambeth was sentenced to 25 years on each conviction, the sentences to run concurrently. This is a consolidated appeal from those convictions.
I
Branum first contends that the evidence was not sufficient to support his conviction because the State failed to prove that he was an accomplice to the charged crimes. We disagree.
James Tate testified that he was awakened at approximately 1:30 a.m. by a man who was holding a flashlight in his face and a gun in his ribs. The man told him to put his hands on top of the covers and that if he cooperated, he would not get hurt. Tate was in an upstairs bedroom. The man forced Tate to accompany him downstairs. Two other men were also downstairs. Tate testified that he was asked where he kept his money and the keys to his automobile. He gave the men the keys to his wife’s 1986 Cadillac automobile and a 1974 Mustang automobile. He further testified that the men took several small electrical appliances, three televisions, a videocassette recorder, a tape recorder, and a microwave oven. Tate further testified that his wife was also brought downstairs. One of the men told Tate’s wife, “Don’t be so slow, don’t make it a murder.” (R. 16.) Tate further stated that he found a broken window in the house that had not been broken prior to the incident. Tate testified that Lambeth’s mother rented a house from him that was 40 to 50 yards from his front porch.
Lillian Tate testified that she was getting out of her bed at approximately 1:30 a.m. when a voice from the hall told her not to move. She testified that a man said, “This is a robbery.” (R. 24.) The man was in the doorway holding a gun and a flashlight. He had a red bandanna over part of his face. He came in the bedroom and pulled the telephone cord out of the wall. Mrs. Tate testified that he shined the flashlight around the room. He took her rings from her fingers and went through all of her dresser drawers. He forced her to accompany him downstairs. She testified that two other men *350 were also downstairs. One of the men stated, “Grandma, get over here. Don’t be so slow. Don’t make this robbery into a murder.” (R. 26.) Mrs. Tate testified that she saw one of the men take a videocassette recorder. She further testified that one of the men took her back upstairs. He told her to raise her nightgown. He unzipped his blue jeans and told her to play with his penis. Mrs. Tate testified that she began screaming and that the man tried to slap her. He then left the room. She and her husband were later tied up together. Her husband was able to get them untied. Mrs. Tate testified that the Cadillac was gone after this incident.
Mrs. Tate further testified that the appellants came to her house two days prior to the robbery. She stated that Lambeth came to the front door and asked about some neighbors who lived next door. Mrs. Tate testified that Lambeth stood there for approximately two minutes. Branum was sitting in the passenger seat of a car looking at the house. Mrs. Tate further testified that Lam-beth’s mother cleaned her house when Mrs. Tate was ill.
Louise Hall testified that she lived 40 yards from the Tates’ house. She stated that she was visiting Mrs. Tate two days before the incident. Lambeth came to the front door and asked about the Tates’ neighbors. Lambeth stated that the neighbors’ dog had torn up a sofa which was being stored in Lambeth’s mother’s garage. Hall testified that Lambeth was looking into the house. Lambeth stayed between 5 and 10 minutes. Hall further testified that she saw a young man sitting in the passenger seat of a car looking all over the house.
Christopher Jordan testified that he and the appellants all lived at the house of Bra-num’s parents. He testified that he told the appellants that he did not have any money and that he wanted to commit a burglary. He further testified that Lambeth mentioned the Tates’ house approximately two days pri- or to the burglary. Jordan testified that Lambeth said that she knew of a house he could burglarize. Branum was also present for this conversation. Lambeth drove Jordan by the house. Branum was also in the car. Jordan testified that Lambeth took him back to the house at approximately 9:00 p.m. She walked around and showed him where all of the rooms were located.
Jordan also testified that earlier that day, he and the appellants got a gun which belonged to Branum’s brother. Branum’s brother suggested that they tell their parents that they were using the gun for squirrel hunting.
Jordan testified that he told the appellants that he was going to commit the burglary later that night. The appellants agreed to drive him to the house. Lambeth drove the car and Branum was in the front passenger seat. Jordan testified that he directed Lam-beth to Frank and Marty’s trailer. Frank and Marty were going to help Jordan break into the house. During the ride to Frank and Marty’s trailer, Lambeth told Jordan where Mr. Tate kept his gun and where Mrs. Tate kept her car keys. Jordan and the appellants also discussed the disposition of the property. Jordan testified that he told the appellants that he would give them some of the money that he got for the property if they let him bring the property back to their house. The appellants picked up Frank and Marty. Jordan, Marty, and Frank discussed how they would gain access into the house. Lambeth dropped the three men off at the end of the Tates’ driveway. Jordan admitted to breaking into the house and robbing the Tates. He testified that he only held a gun on Mrs. Tate once. He testified that he started her car and that he waited for Frank and Marty to rob the house.
Jordan testified that he returned to the Branum’s house in Mrs. Tate’s 1986 Cadillac. The appellants were there. He unloaded the stolen property and was arrested shortly thereafter.
Lieutenant Wayne Farmer of the Mobile Police Department testified that he responded to a call shortly after the commission of the offenses. He went to the Branum house. The appellants gave him their consent to search the house. He found some of the stolen property and a rifle.
Corporal Ray Robinson of the Mobile Police Department took several statements from the appellants. Lambeth and Branum *351 initially denied any involvement in the crimes. Lambeth later stated that she knew what was going to happen when she drove the three men to the Tates’ house. She stated that her earlier statement was not trae and that she took the men to the Tates’ house for the purpose of robbing them. She admitted to participating in the crimes. Bra-num later stated that when they dropped off the three men, he knew they were going to do something wrong. He also stated that the men used his brother’s gun and that he knew he dropped them off “for the express purpose of robbing the house.” (R. 187.) He also stated that he let them use the gun.
We find that the evidence was sufficient to prove that the appellant was guilty of the charged offenses under a complicity theory. Section 13A-2-23, Code of Alabama 1975, provides that:
“A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
“(1) He procures, induces, or causes such other person to commit the offense; or
“(2) He aids or abets such other person to commit the offense; or
“(3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make.”
“Any word or act contributing to the commission of a felony, intended and calculated to incite or encourage its accomplishment, whether or not the one so contributing is present, brings the accused within the statute that makes any person concerned in the commission of a felony, directly or indirectly, a principal.” Payne v. State, 487 So.2d 256, 261 (Ala.Grim.App.1986) (quoting Scott v. State, 374 So.2d 316, 318-19 (Ala.1979). See also Graham v. State, 494 So.2d 916 (Ala.Crim.App.1986). The record reveals that the appellant aided and abetted in the commission of the charged offenses. The appellant himself admitted to participating in the crimes. The State’s evidence was sufficient to sustain the convictions. See, e.g., Graham.
II
Branum next contends that the trial court erred in failing to consider a presen-tence report before sentencing. The appellant did not object to the trial court’s alleged failure to consider the presentence report. Thus, this issue was not preserved for our review. Hill v. State, 571 So.2d 1297 (Ala. Crim.App.1990); Maul v. State, 531 So.2d 35 (Ala.Crim.App.1987). We also disagree with the appellant’s contention that the trial court ordered a presentence report ex mero motu. Our review of the record leads us to conclude that the trial court did not order a presen-tence report nor did the appellant request one.
III
Lambeth first contends that she could not be convicted of both robbery and theft and thus, that the robbery conviction must be reversed and judgment rendered in her favor. Although this issue was not raised at the trial court level and is being raised for the first time on appeal, “when a sentence is clearly illegal or is clearly not authorized by statute, the defendant does not have to object at the trial level in order to preserve that issue for review.” Ex parte Brannon, 547 So.2d 68 (Ala.1989). We agree with the appellant’s contention that she could not be convicted of both robbery and theft under the particular facts of this case, but disagree with her contention that it is the robbery conviction that must be vacated.
The record reveals that the appellant was indicted for first degree robbery. She was also separately indicted for the first degree theft of the Tates’ automobile. Our review of the record leads us to conclude that all of the Tates’ property, including the Cadillac, was taken during the same transaction and that the taking of that property constituted one offense. The State’s evidence indicates that Lambeth told the three principals to the crime where Mrs. Tate kept her car keys. The record also indicates that the car was taken at the beginning of the robbery and that all of the stolen property was then loaded into the car. The record indicates that the car was taken in the course of the robbery. Because the taking of the car was part and parcel of the robbery, the appellants *352 could not be convicted of both robbery and theft. See generally Pardue v. State, 571 So.2d 320 (Ala.Crim.App.1989); Connolly v. State, 539 So.2d 436 (Ala.Crim.App.1988).
The evidence presented indicates that the appellants either participated in the commission of the crimes or did not participate in the commission of the crimes. The substance of both Lambeth’s and Branum’s testimony was that they did not participate in the commission of the charged offenses. The jury believed the State’s evidence and convicted the appellants of robbery and theft. Because the robbery of the household items and the car constituted one transaction, the appellants could not be convicted of both offenses. Therefore, this cause must be remanded to the circuit court with instructions that it set aside either the theft or the robbery conviction. See Pardue, 571 So.2d at 330.
Although Branum did not raise this issue at trial or in his brief, we have addressed this issue and justice requires that one of his convictions must be reversed and rendered.
IV
Lambeth contends that her convictions are due to be reversed because, she argues, she was denied effective assistance of counsel. This claim was not raised in the trial court and thus, was not preserved for our review. Carpenter v. State, 581 So.2d 1277 (Ala.Crim.App.1991); Marks v. State, 581 So.2d 1182 (Ala.Crim.App.1990).
The appellants’ convictions for burglary is affirmed. The appellants’ robbery and theft convictions are remanded to the circuit court with directions that the circuit court set aside either the theft or the robbery conviction of each of the appellants. A return to remand should be filed with this count within 45 days of this opinion.
REMANDED WITH DIRECTIONS.*
All the Judges concur.

 Reporter of Decisions’ note: On April 16, 1993, The Court of Criminal Appeals issued a memorandum reading: "The circuit court has complied with this court’s order on remand, and thus, this cause is affirmed.”