Lamar Christovia Nettles appeals from his convictions on charges of kidnapping in the first degree, a violation of §13A-6-43, Ala. Code 1975, and second-degree burglary, a violation of § 13A-7-6, Ala. Code 1975. At an earlier trial, Nettles was convicted of both offenses, and he appealed to this court. On March 8, 1996, this Court reversed the convictions and returned the case for a new trial. Nettles v. State, 683 So.2d 9
(Ala.Cr.App. 1996). On May 21, 1997, Nettles was retried before a jury on charges that he kidnapped Tim Phillips at gunpoint to get the door keys to the McDonald's restaurant where Mr. Phillips was assistant manager and the combination to the restaurant's safe, and then used the keys and the safe combination to burglarize the restaurant. Following the guilty verdict, the trial judge sentenced Nettles to life imprisonment for the first-degree kidnapping and to 20 years' imprisonment for the second-degree burglary. This appeal follows.
Nettles argues that the trial court erred in not granting a hearing outside the presence of the jury to determine the admissibility of the confession Nettles made to a police investigator.
The evidence tends to show the following. Nettles was caught inside the McDonald's restaurant on October 2, 1993. He was arrested and was taken to the police station, where he was interrogated by police investigator James Graham. Investigator Graham was called as a witness during the State's presentation of its case. *Page 628 
As Investigator Graham began to testify as to the confession he took from Nettles, trial counsel interrupted, stating:
 "MR. QUINLIVAN: Judge, I would like to have a hearing or the voluntariness of this outside the presence of the jury."
(R. 75.) The trial judge denied the request, stating that he would explore the matter more fully on the record when the jury was "on break."
As Investigator Graham began to identify signatures on theMiranda rights form, trial counsel again objected
 "MR. QUINLIVAN: Judge, I am going to have to object to any testimony by this officer about any, kind of statement given unless there is a proper predicate laid both outside the presence of the jury and before the jury as to the voluntariness and constitutionality of it."
(R. 76.) The trial Judge reminded trial counsel that he had already ruled on his request for a hearing outside the presence of the jury, but told the prosecutor to lay the proper predicate for the admission of the confession. Investigation Graham testified that he read Nettles his Miranda rights from a form provided to officers by the Mobile Police Department; he then enumerated the specific rights he had read to Nettles and said that Nettles appeared to understand his rights Graham then testified that no one threatened, coerced, or sought to induce Nettles to give a statement; that no one told Nettles that it would be better or worse for him if he made a statement; and that no one offered Nettles any hope of reward in return for a statement. He then said that Nettles waived his rights and made a confession. Over the repeated objections of trial counsel, the trial court then admitted the taped confession, it was played to the jury, and the State rested.
After the jury was released for its lunch break, the trial court made the following statement concerning its decision to deny a hearing outside the present of the jury to determine the voluntariness and admissibility of the confession:
 "THE COURT: . . . I am not sure how much of this was on the record, but it was brought to the Court's attention earlier that the state intended to use the statement, which statement was used at the previous trial. That further the Court was advised that at that trial a hearing was held outside the presence of the jury concerning the voluntariness and other essentials of the admissibility the statement;, and that following that hearing the judge at that trial ruled that the statement was admissible. The court does not believe that a second hearing is necessary for that purpose, the evidence having been presented to a judge and ruled on by him and the matter having winded its way up to and back from the appellate court on that record. So I deny — on, that basis the court denied the request for a second hearing on the same subject outside the presence of the jury. Anything else?"
(R. 86-87.) The trial counsel argued that this was a new trial with a new trial judge and a new defense lawyer, and that Nettles should be entitled to have a new hearing for the trial judge to determine whether the confession was freely, voluntarily, and intelligently made. He further argued that Nettles was entitled to a hearing outside the presence of the jury and that Nettles had a right to testify before the trial judge then presiding over his case. He then proffered that, had he been given the opportunity to testify, Nettles would have said that he was intoxicated and under the influence of marijuana when he confessed. The trial judge responded that Nettles had had the right to testify at the hearing that took place during the first trial and that if he chose not to testify, the right to another hearing to determine the admissibility of the confession was not revived by the fact that his first conviction was reversed. The trial judge concluded:
 "THE COURT: . . . [T]here is no question but that there was a hearing held *Page 629 
and that a [duly] acting judge of this court made a ruling on the facts presented, which ruling the court finds is a matter decided."
(R. 88.)
While the record of the first trial was not made a part of the record in the present appeal, this Court may take judicial notice of its own records in this situation. Hull v. State,607 So.2d 369, 371 n. 1 (Ala.Cr.App. 1992). In reviewing the admission of Nettle's confession in his first trial, we note that Nettles testified outside the presence of the jury regarding his having drunk alcohol and having smoked marijuana before making the statement and that his confession was subsequently admitted into evidence without a motion to suppress or an objection to its admission.
The record of the first trial showed that Nettles was permitted to question Investigator Graham on voir dire regarding the circumstances surrounding the taking of the statement. This was done in the presence of the jury. Trial counsel then asked the judge to allow Nettles to testify about the confession outside the presence of the jury. The trial judge granted that request. The pertinent parts of that testimony are as follows:
 "Q [Defense counsel]: Okay, Lamar, you remember giving a statement, remember talking to the police officer?
 "A: Yeah, I remember them taking me to the precinct
". . . .
"Q: Did you understand your rights?
"A: At the time, I did, yes, sir.
"Q: Had you had any sort of alcohol?
"A: Yes, sir.
 "Q: Tell the Court how much alcohol you had consumed or drugs [you had taken] that night.
". . . .
 "A: Yes, sir. It was about two [or] three fifths of Thunderbird [wine]. We had been smoking marijuana laced joint[s] practically all day
 Q: Do you remember saying a lot of this — you read the statement?
"A: Yeah, I remember saying this.
 "Q: Do you remember saying what you read in this statement?
 "A: Some of the information I remember, some of it, I don't. It's been quite a while. I don't remember making some of those statements.
 "Q: Did the alcohol and the drugs have an affect on you, if you recall, when you were at the station?
"A: Yes, it did."
(R. in first trial 75-76.)
Then the prosecutor and trial judge asked Nettles some questions:
 "Q [Prosecutor]: You told Mr. White at the time you gave your statement you did understand your rights, correct?
 "A: Yes, I understood what the officer was saying.
 "Q: And you understood you have a right to a lawyer and you could [have] stopped the interview, right?
"A: Yes, sir. . . .
 "Q [Trial judge]: . . . [D]id any of these officers there or anyone there in their presence threaten or intimidate you in any way?
 "A: As far as interrogating for questioning, that's all that went on there. Wasn't no physical threat, anything by word of mouth.
 "Q [Prosecutor]: Did this officer here or Officer Bush or anyone else in their presence promise you anything to get you — they didn't promise you anything, did they?
 "A: Just that they would try to do their best to try to help this case when I go to court. That's only thing I know. They said they would try to help as best they could.
 "Q: They did not promise you any kind of sentence, did they?
"A: No.
"Q: And they didn't threaten?
"A: No. *Page 630 
 "Q: And you understood what was going on?
"A: Yes."
(R. in first trial 76-77.)
After a discussion of the mechanics of presenting the tape recording of the statement or a transcript of it, the trial judge turned to the trial counsel and said, "Well, I wondered, Mr. White, why you wanted to bring him up here and give testimony the way he did. Only thing about it is this Court is going to submit his statement as being prima facie and voluntary and that, of course, is for the jury to weigh." Trial counsel candidly admitted that Nettles's testimony was not what Nettles had told him before he took the witness stand. There was no objection to the trial court's finding that the State had met its burden of proving the confession was voluntary, and there was no objection when the trial court admitted the statement into evidence at appellant's first trial.
The procedure for determining the voluntariness of a confession has been well-settled for over 30 years. The Alabama Supreme Court first outlined the procedure in Duncan v. State, 278 Ala. 145,176 So.2d 840 (Ala. 1965), in response to the United States Supreme Court's mandate in Jackson v. Denno, 378 U.S. 368,84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). In Duncan, the Court set out the following procedure:
 "We are clear to the conclusion that whenever a motion is made for the question of the voluntariness of the confession to be determined outside the presence of the, jury, the motion should be granted. In such a hearing, the trial judge sitting alone should make a determination upon a proper record of the issue of voluntariness. At such a hearing the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained. By so doing, the defendant will not waive his right to decline to take the stand in his own defense on the trial in chief nor will he waive any of the other rights stemming from his choice not to testify. If the confession is held voluntary and admitted, the jury's consideration of that confession and surrounding circumstances shall proceed in accordance with the `Orthodox' procedure, that is, the jury considers the voluntariness as affecting the weight or credibility of the confession."
Duncan v. State, 278 Ala. at 165, 176 So.2d at 859.
The question before us is whether the trial court's compliance with that procedure during the first trial was sufficient to allow the trial court in the second trial to decline to hear testimony outside the presence of the jury and then decline to determine the voluntariness of the confession before admitting it into evidence.
We hold that, under the circumstances presented at this trial, the trial court at the second trial could not consider the admissibility of the confession "a matter decided."[1] An unqualified reversal would require a new trial and place the parties in the trial court in the same position as if the case had never been tried. In this case, the voluntariness of the confession was not an issue before this court on the appeal from the first trial. Thus, absent direction by this court limiting relitigation, or an opinion by this court determining the issue of the voluntariness of the confession at the first trial, trial counsel had to object to the admission of the confession at the second trial to preserve the issue for review, and the trial court was required to consider the admissibility of the confession when it was offered. See People v. Mattson, 50 Cal.3d 826,849, 789 *Page 631 631 P.2d 983, 999, 268 Cal.Rptr. 802, 818, cert. denied,498 U.S. 1017 111 S.Ct. 591, 112 L.Ed.2d 595 (1990). The trial court erred when it declined to consider evidence and determine the voluntariness of the confession when it was offered. When Nettles requested a hearing outside the presence of the jury and informed the trial court that he wished to testify concerning the voluntariness of his confession, the trial court was required to grant that request, pursuant to Jackson v. Denno, supra.
Although we find that the trial court erred in failing to grant Nettles a hearing outside the presence of the jury, we do not agree that Nettles is entitled to a new trial. Heard v. State,584 So.2d 556, 562 (Ala.Cr.App. 1991). Instead, we hold that Nettles is entitled to a post-trial evidentiary hearing to determine whether the confession was voluntary under Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)Jackson v. Denno, 378 U.S. at 393-94, 84 S.Ct. 1774; Ex parteSmith, 554 So.2d 451, 452-54 (Ala. 1989). We therefore remand the case to the trial court for a post-trial hearing to determine the voluntariness and admissibility of the confession. Return is to be made to this Court within 60 days.
REMANDED WITH DIRECTIONS.
All the Judges concur.
 On Return to Remand
On June 19, 1998, this Court remanded this cause to trial court for a post-trial hearing to determine the voluntariness and admissibility of the appellant's confession. Nettles v. State,731 So.2d 626 (Ala.Cr App. 1998). The trial court "reached back to the first trial and considered the testimony" of both the defendant and the police investigator in the admissibility hearing conducted by another trial judge in Nettles's first trial. The trial court then independently concluded that the findings and conclusions made by the trial judge in the first trial were correct and it adopted those findings in admitting the confession.
The trial court did not err in considering and adopting the findings made by the first trial court and in determining that the confession was admissible. In Bass v. State, 626 S.W.2d 769,774 (Tex.Crim.App. 1982), the Texas Court of Criminal Appeals held:
 "Furthermore, if a procedurally and substantively adequate hearing has been held on this issue, a trial judge may consider evidence presented before a different fact-finder and adopt the findings and conclusions of the fact-finder in determining the admissibility of a confession, without the necessity of holding a second hearing to hear the same evidence. We emphasize the narrowness of our holding in this case: absent a claim of new evidence on the issue of a confession's voluntariness, and as long as a procedurally and subtantively[substantively] adequate hearing has been held before a fact-finder other than a jury which determines the defendant's guilt or innocence, the United State's Constitution does not require that a trial judge hold a second hearing to determine the voluntariness of a confession. He may make his determination based upon the evidence presented at the earlier hearing and may adopt the findings and conclusions of the fact-finder at the earlier hearing."
We agree with that court, and we believe this procedure is acceptable in Alabama courts.
We hold that the trial court's finding that Nettles's confession was voluntary and admissible based on its adoption of the findings and conclusions of the first trial court is correct.Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966); O'Shields v. State, 689 So.2d 227, 230 (Ala.Cr.App. 1996). *Page 632 
The judgment of the circuit court is affirmed.
AFFIRMED.
LONG, P.J, and McMILLAN, BROWN, and BASCHAB, JJ., concur.
[1] Because the trial court considered the issue already settle by the first trial court, we must hold for another day the question whether it could have reached back to the first trial and considered the testimony of the Nettles at that hearing and then adopted the findings and conclusions of the first trial judge in making its own determination as to the voluntariness of The confession See Bass v. State, 626 S.W.2d 769 774 (Tex.Crim.App. 1982).