KELLUM, Judge.
Marvin Dallas Lynch appeals the circuit court’s summary dismissal of his petition for postconviction relief filed pursuant to Rule 32,, Ala. R.Crim. P„ in which he. attacked his 2008. convictions for one count .of first-degree robbery, one count of, second-degree theft of property, and one count of reckless endangerment, and his resulting sentences, as a.habitual offender, of 60 years’ imprisonment for the robbery conviction,. lG.years’ imprisonment for the theft conviction, and 1 year’s imprisonment for the reckless.-endangerment conviction. This. Court affirmed Lynch’s convictions and sentences in an unpublished memorandum issued on July 24, 2009. Lynch v. State (No. CR-08-0375), 57 So.3d 205 (Ala. Crim.App.2009) (table). The Alabama Supreme Court denied certiorari, review, and this Court issued a certificate of judgment on May 7, 2010.
• On June 29, 2015, Lynch filed this, his second; Rule 32 petition.[1] Lynch- alleged in his -petition: (1) that the State sup-’ pressed exculpatory evidence, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) that the *262 trial court lacked jurisdiction to render the judgments and to impose the sentences for first-degree robbery and second-degree theft because, he said, those convictions violate double-jeopardy principles; and (3) that the trial court lacked jurisdiction to render the judgments or to impose the sentences for first-degree robbery, second-degree theft, and reckless endangerment because, he said, there was no probable cause to support the arrest warrant.
On or about July 16, 2015, the State filed a response to Lynch’s petition, arguing that Lynch’s claims were precluded by Rules 32.2(a)(3) and (a)(5), that they were insufficiently pleaded, and that they were meritless.;' On July 21, 2015,' the circuit court issued an order summarily dismissing Lynch’s petition. On July 29, 2015, Lynch filed a reply to the State’s response. On or about August 5, 2015, the State filed an amended response, admitting to clerical mistakes in its initial response, mistakes Lynch had pointed out in his reply. On ■ August 17, 2015, the circuit court issued an order setting aside its July 21, 2015, order on the ground that additional pleadings had been filed and, after considering the additional pleadings, the court again summarily dismissed Lynch’s petition, finding “that the Petition is not sufficiently specific, fails to state a claim or that no material issue of fact or law exists which would entitle [Lynch] to relief under this Rule 32 and that no purpose would be served by any further proceeding.” (C. 99.)
On appeal, Lynch reasserts the three claims he raised in his petition. The facts of the crimes are necessary for a better understanding of Lynch’s claims.[2] In our unpublished memorandum affirming Lynch’s convictions and sentences, this Court set out the following facts:
“On the morning of April 23, 2008, 72-year-old D.H. Edmondson drove his truck to his barn and noticed that a truck was parked partially in the driveway near the barn. Edmondson got out of his truck and saw Lynch, whom he had never seen before, and asked Lynch ‘[A]re you broke, down, lost?’ One of Edmondson’s new transmissions was in the back of Lynch’s truck. Lynch grabbed Edmondson in a ‘bear hug' and the two men ‘scuffled’ down the driveway. Lynch pushed Edmondson down and struck Edmondson on his back with an object. Lynch removed Edmondson’s .22 rifle from the cab of Edmondson’s truck and began shooting. Edmondson crawled around to the passenger side of his truck as gunshots striking the road caused gravel to strike him.
“Lynch got into his truck, and Edmondson got into his truck. Edmondson rammed his truck into Lynch’s truck as Lynch drove down the driveway. After leaving Edmondson’s property, but before being apprehended by police, Lynch engaged in a high speed automobile chase with police, followed by a chase on foot.”
Additionally, we point out that after being apprehended, Lynch gave police a statement denying any involvement in the crimes. However, a few days later, Lynch gave the following statement to police:
“On the day this happened, I went riding around looking for scrap metal. I had left Roanoke and had driven to Lafayette. The fence posts [found in Lynch’s truck] I got in Roanoke, and the 5th wheel and rims [found in Lynch’s truck] I got across the street from the *263 fire department, in -Lafayette. I then went back to the car wash to close my tailgate and check my tire. I then drove to the Big Cat and got 15 dollars worth of gas. I was driving towards Wadley on Highway] 77 when I saw a barn up a dirt drive. I turned around and pulled up into the drive, got .out and rolled up [to] a couple of blue-pumps. A man in a red truck pulled up behind my.truck. The man was sitting in his truck and I asked him who owned this property and he said, T do.’ Then I asked the man if he wanted to get^ rid of some of the scrap he had up there and he said ‘Hell no’ and ‘that looks like my transmission on the back of your truck.’ I had gotten the transmission loaded before the man got there. I told the man that he was crazy as hell, and I’m getting outta [sic]' here. I got into my truck, and I saw the man standing at the back of my truck holding a rifle. He fired one shot over my truck. I got out of my truck and told the old man I didn’t have his stuff. I had my hands up and he turned away from me and said come with me. I then saw he wasn’t looking, and I grabbed the gun and pushed it into the ground. I had my finger on the trigger and' 5 rounds got fired into the ground while [I tried] to get the gun away from the old man. When I finally got the gun away, I put it in the cab of my truck and the man was laying on the ground. I then motioned for the man to get in his truck and back up and get out of the way. The man got in his truck, and he rammed my truck, causing my door to slam. I open[ed] the door and got in my truck, as I was trying to leave, the man sideswiped me with his truck. I spun out, and I think his truck went on down into the field. I then got on Highway]' 77 and head[ed] back towards Lafayette, and I turned off on the first road to the right. I then traveled on that road which was the first dirt road to the left. I went, a little ways and then threw the transmission off - my truck ‘into the woods. I drove a little further,, then threw the gun into a creek. I then went to some guy named ‘Dawg’ and got him to fix my flat tire. After that I left from there and ended back up on Hfighway] 77 headed towards Wadley. I then got saw [sic] by one of the deputies and I got scared and ran. I eventually pulled over, got out of the truck and ran into the woods where I was later caught by Deputies. When I was in the back of the police1 car, when they opened the door for him to identify me, he, the old man, tried to pull a gun on me. This was nothing inore than a simple case of 'theft and trespass that went bad when this guy tried to'take the law into his own hands.”
(Record on Direct Appeal, C. 48-50.)
Edmondson’s rifle was later recovered from a. creek; the transmission was not recovered.
I.
Lynch first reasserts on appeal the claim from his petition that the State suppressed exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Lynch alleged in his petition that the State had suppressed statements the victim, D.H. Edmondson, had made to police the day of the crimes. Lynch asserted that Edmondson’s statements to police conflicted with- his testimony at trial and established that Edmondson had perjured himself at trial. Specifically, Lynch asserted that Edmondson ha'd testified at trial that after he and Lynch had struggled, Lynch had reached into Edmondson’s truck, taken Edmondson’s rifle, and fired the' rifle in Edmondson’s direction. *264 Edmondson denied at trial that’ he had gotten out of his-truck holding his rifle, that he had pointed the rifle at Lynch, or that he had fired the rifle in Lynch’s direction—as Lynch asserted in his second statement to police. Lynch also stated that Edmondson had testified at trial that he had suffered injuries from his encounter with Lynch,1 including a swollen, hand and a bruised back. Lynch .alleged, however, that Edmondson had given statements to police in which he stated that he “did not..sustain any injuries, and that he did got out [sic] the truck with his .22 caliber rifle, and a struggle over the gun did happen.” (C. .42.) In other words, Lynch alleged that Edmondson’s statements to ..police mirrored his own statement to police placing the blame for the incident on Edmondson.
“To [establish] a Brady violation, a defendant must show that ‘“(1) the prosecution suppressed evidence; (2) the evidence was- favorable to the defendant; and (3) the evidence was material to the issues at trial.” ’ Johnson v. State, 612 So.2d 1288, 1293 (Ala.Cr.App.1992), quoting Stano v. Dugger, 901 F.2d 898, 899 (11th Cir.1990), cert. denied, Stano v. Singletary, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996). See Smith v. State, 675 So.2d 100 (Ala.Cr.App. 1995). ‘ “The evidence is material only if there is a reasonable probability that, had the eyidence been-disclosed to the defense, the result of. the proceeding-would have been different. A ‘reasonable probability1 is a probability suffi--dent to undermine confidence in the outcome.”’ Johnson, 612 So.2d at 1293, quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 8375, 3383, 87 L.Ed.2d 481 (1985).”
Freeman v. State, 722 So.2d 806, 810 (Ala. Crim.App,1998). “The term suppression ‘means non-disclosure of evidence that the prosecutor, and not the defense attorney, knew to be in - existence.” Donahoo v. State, 552 So.2d 887, 895 (Ala.Crim.App.1989) (quoting Ogden v. Wolff, 522 F.2d 816, 820 (8th Cir.1975)). “ ‘[T]he rule of Brady applies only in situations which involve “discovery after trial of information which had been known to the prosecution but unknown to the defense.” ’ ” Bates v. State, 549 So.2d 601, 609 (Ala.Crim.App.1989) (quoting Gardner v. State, 530 So.2d 250, 256 (Ala.Crim.App.1987), quoting in turn United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)) (some emphasis added).
Although Lynch alleged in his petition that neither he nor his attorney was aware of any statements Edmondson had made to police, the transcript of Lynch’s trial contains references during the testimony of Tony Ward, an investigator with the. Chambers County Sheriffs Department, indicating that. Edmondson had made statements to law-enforcement officers the day of the crimes. Because the existence of Edmondson’s statements to police, albeit not the content of those statements, was disclosed during trial, this claim ⅛, as asserted by the State in its response to Lynch’s petition, precluded by Rules 32.2(a)(3) and (a)(5). because it could have been, but was not, raised, and addressed at trial and on appeal.
II,
Lynch also reasserts on appeal the claim from his petition that the trial court lacked jurisdiction to render the judgments or to impose the sentences for first-degree robbery, second-degree theft, and reckless endangerment because, he said, there was no probable cause to support the arrest warrant.
Although couched in jurisdictional terms, this claim is not jurisdictional.. See, e.g., Bearden v. State, 825 So,2d 868, 870 *265 (Ala.Crim.App.2001); Scroggins v, State, 827 So.2d 878, 882 (Ala.Crim.App.2001); Duren v. State, 813 So.2d 928, 930 (Ala.Crim.App.2000); and Sumlin v. State, 710 So.2d 941, 942 (Ala.Crim.App.1998) (all holding that challenges to an arrest warrant or to the affidavit submitted in support of the arrest warrant are not jurisdictional claims). Therefore, this claim is also precluded, as asserted by the State in its response to Lynch’s petition, by Rules 32.2(a)(3) and (a)(5) because it could have been, but was not, raised and addressed at trial and on appeal,
III.
Finally, Lynch reasserts on appeal the claim from his petition that the trial court lacked jurisdiction to render the judgments.or to impose the sentences for first-degree robbery , and second-degree theft because, he said, those convictions violate double-jeopardy principles. Specifically, Lynch alleged in his petition that those two convictions violated double-jeopardy principles because, he said, “the State cannot convert a single theft of various items of property stolen fróm one victim in the same robbery, theft into separate counts of the indictment.” (C. 47.) Lynch maintained that the State improperly divided a single act of theft of a rifle, a transmission, and scrap metal into two separate charges—second-degree theft and first-degree robbery—in violation of double-jeopardy principles. This .claim is jurisdictional; therefore, it is not precluded by any of the provisions in Rule 32.2. See Ex parte Benefield, 932 So.2d 92 (Ala. 2005); Ex parte Robey, 920 So.2d 1069 (Ala.2004); and Young v. State, 892 So.2d 988 (Ala.Crim.App.2004).
It is well settled that “[a] single crime cannot be divided into two or more offenses and thereby subject the perpetrator to multiple convictions for the same offense.” Ex parte Darby, 516 So.2d 786, 787 (Ala.1987). With respect to theft of property, this Court has held that “[t]he State cannot convert a single theft of various items of property stolen from the same victim in the same [transaction]' into separate offenses by alleging the theft of different items in separate counts of the indictment.” Pardue v. State, 571 So.2d 320, 330 (Ala.Crim.App.1989), rev’d on other grounds, 571 So.2d 333 (Ala.1990).
In Connolly v. State, 539 So.2d 436 (Ala. Crim.App.1988), this Court held that a conviction for theft of an automobile barred a later charge for capital murder during a robbery involving property other than the automobile because the' theft of the' automobile and the theft of the Other property occurred as a single transaction and, therefore, constituted a single offense of theft. We explained:
“[F]ór purposes of former jeopardy, theft is a lesser included offense of the crime of robbery. Robbery is regarded as an‘ággravated’form-of theft. Ramsey v. State, 441 So.2d 1065, 1067 (Ala.Cr.App.1983). By statutory definition, robbery can be committed only ‘in the course of committing a theft.’ §§ 13 A-8-41 through 43. ‘By its very definition, the crime of robbery ... necessarily includes the crime of theft....’ Ramsey, 441 So.2d at 1067. See Ex parte Hannah, 527 So.2d 675 (Ala.1988). Consequently, for purposes of former jeopardy, theft is a lesser included offense of the capital offense of murder during the course of a robbery. See Ex parte Beverly, 497 So.2d 519, 525 (Ala.1986) (robbery-intentional killing .embraced the lesser included offense of grand larceny).
“We conclude that the ,theft of Ms. Sands’s car, watch, currency, television, adding machine, and bank card was. one offense and not separate offenses of *266 theft. Consequently*' the defendant’s conviction for the theft of Ms. Sands’s car barred his prosecution for the robbery involving the property other than the car.
“The State could not convert a single theft of various items of property into separate offenses by alleging the theft of different items in separate indictments. All- the property was taken during the same transaction and constituted one offense. Such is not permitted. . .
“ ‘It has been held that a conviction of petit larceny is a bar to a prosecution for grand larceny on the theory that there are no different degrees in the crime of larceny, the intent being the same regardless of the value of the property stolen. Similarly, where the theft of several articles at one and the same time and plape constitutes only one indivisible crime, even though the articles belong to different owners, a conviction or acquittal of the theft of one of the articles .is a bar to. a prosecution for the theft of the others. Moreover, where the stealing of several articles at the same time constitutes only one offense, even though it may be susceptible of division into parts, it is held that a prosecution to final judgment for stealing some of the articles will bar a subsequent prosecution for stealing any of the articles taken at the same time. The rule is to the contrary, however, where articles have been stolen at divers[e] times and places and from different owners, even though pursuant to a conspiracy or plan embracing all the thefts.’ 50 Am.Jur.2d Larceny § 139 at 315-16 (1970) (footnotes omitted).
“ ‘A single crime cannot be split up, or divided, into two or more offenses.’ Baldwin v. State, 47 Ala.App. 136, 140, 251 So.2d 633 (1971) (conviction for assault and battery bars prosecution for robbery). Thomas v. State, 41 Ala.App. 525, 526, 138 So.2d 269 (1962) (verdict of guilty of grand larceny constitutes acquittal of robbery charge). ‘The Alabama cases have long recognized that constitutional double jeopardy provisions, U.S. Const. Amend. V and Ala. Const., Art. I, § 9, prohibit the splitting of a single criminal act so as to'justify multiple prosecutions for the identical criminal behavior.’ Smith v. State, 472 So.2d 677, 684 (Ala.Cr.App.1984). The rule against splitting one crime into separate offenses was stated in Hurst v. State, 86 Ala. 604, 6 So. 120 (1889), as follows:
“‘It has often been decided that a single' crime cannot be split up or subdivided into two or more indictable offenses.... “[A] series of criminal charges cannot, under our system of jurisprudence, be based on the same offense or criminal act, at least, as concerns the dignity of the same sovereignty. If the state elects, through its authorized officers, to prosecute a crime in one of its phases or aspects, it cannot afterwards prosecute the same criminal act under color of another name.”
“ ‘It is accordingly held by the great preponderance of authority that the stealing of several articles at the same time and place, although they belong to different owners, constitutes but a single indictable crime, and can be prosecuted as such but once. “An indictment,” says Mr. Freeman, “could not be found for the larceny of one of the articles, and after the verdict another indictment sustained for the stealing of the remaining articles. Indeed, to put such a power in the hands of the prosecuting attorney would be to render the salutary doctrine of prior jeopardy in many in *267 stances practically nugatory.”’ [86 Ala. at 607,] 6 So. at 121 (citations omitted.)
“The Hurst rule was rejected in McKinney v. State, 511 So.2d 220 (Ala. 1987), insofar as it would disallow multiple prosecutions when there are multiple victims. In McKinney, the Alabama Supreme Court abandoned its minority position and joined ‘the majority of states that allow for multiple convictions when more than one person is injured as the result of a single act.’ 511 So.2d at 225. The court held that, when a single shotgun blast injures more than one person, multiple prosecutions and convictions should be allowed.
“The court’s holding in McKinney was limited to a single act resulting in injury to more than one , person. We find that the Hurst rule, as it applies to .separate items of property taken from one victim in one act of theft, is still intact. See Ex parte Darby, 516 So.2d 786, 787 (Ala. 1987) (‘Thus, possession of a number of different controlled substances will support only one sentence ,and fine under § 20-2-70.’).
“This court, dealing with a similar fact situation in Floyd v. State, 486 So.2d 1309 (Ala.Cr.App.1984), affirmed, Ex parte Floyd, 486 So.2d 1321 (Ala.1986), adhered to the rule against splitting one act of larceny into separate offenses corresponding to the separate items of stolen property. In Floyd, the accused was indicted for a capital offense involving the murder of a taxi driver during a robbery. The State alleged, in separate counts, the felonious taking of the taxicab and the felonious taking of currency. On the premise that the counts charged separate offenses, the accused argued that the State should have been required to elect which count would be submitted to the jury. This court rejected that argument and held that the purpose of the separate counts ‘was not to charge two or more separate offenses, but to vary the description-of one and the same offense based upon one and the same transaction.’ Floyd v. State, 486 So.2d at 1313 (emphasis added). For present purposes, Floyd is indistinguishable. Here the State split a single theft of the murder victim’s vehicle and other property into two offenses by convicting the defendant of theft of the automdbile, and then by prosecuting him for murder during the felonious taking of her other property.
“ ‘It is the fixed policy of the law in this jurisdiction that a single crime cannot be split up or subdivided into two or more indictable offenses and, if the state, through its'duly constituted officers, in a court 'of competent jurisdiction, elects to prosecute a crime in one of its phases or aspects it cannot afterwards prosecute the same criminal act under ' color of another name.... In Buchanan v. State, 10 Ala.App. 103, 105, 65 South. 205 [ (1913) ], it was held: “The state cannot elect to prosecute and try a person for a lower grade and then put him on trial for a higher grade' of the same offense.”’ Savage v. State, 18 Ala.App. 299, 300, 92 So. 19 (1921).
“We conclude that the theft of the various items of Ms. Sands’s property constituted one offense, that this theft constituted a lesser included offense of robbery, which was a lesser included offense of the charged capital offense of robbery-murder.
“Therefore, we hold that the prosecution of the defendant for the capital offense of murder-robbery after his conviction for theft violated established principles of former jeopardy.”
539 So.2d at 441-43.
Subsequently, in Branum v. State, 623 So.2d 348 (Ala.Crim.App.1992), this Court *268 similarly held that the theft of household items and the theft of an automobile that occurred during the course of a single transaction could not be divided into one count of first-degree robbery during the course of the theft of the househpld items, and one count of first-degree theft for the theft of the automobile. In Branum, three armed men entered the home of James and Lillian Tate and forcibly took several hpusehold items. The . men loaded the items into the ¡Tates’ Cadillac automobile and then fled the scene. James Larry Branum and Tobi Carol Lambeth, who drove the three men to the Tates’ home, were subsequently charged with, and convicted of, one count of first-degree burglary, one count of first-degree robbery, and one count of first-degree theft. On appeal, this Court held that the convictions for both robbery and theft violated double-jeopardy principles. We explained:
“Our review of. the record .leads us to conclude that all of the Tates? property, including the .Cadillac, was taken during the same transaction and that the taking of that property constituted one offense. The State’s evidence indicates that Lam-beth told the. three principals to the crime, where ■ Mrs. Tate kept her car keys. The record also indicates that the car [keys were] taken at the beginning of the robbery and that all of the stolen property was then loaded into the car; The record indicates that the car was taken in the course of the robbery. Because the taking of the car was part and parcel of the robbery, the appellants could not be convicted of both robbery and theft.. See generally Pardue v. State, 571 So.2d 320 (Ala.Crim.App.1989); Connolly v. State, 539 So.2d 436 (Ala.Crim.App.1988).”
623 So.2d at 351-52.
Similarly, in this case, the record from Lynch’s direct appeal reflects that the rifle, the transmission, and the scrap metal were all taken as part of a single transaction and that the taking of that property constituted one offense.' The record indicates that Lynch used force against Edmondson in the course of taking the transmission, the scrap metal, and the rifle. ■ The taking of the rifle, then, was part and parcel of the robbery and, in fact, it was the taking of the rifle that elevated the crime to first-degree robbery. See, e.g., Bush v. State, 580 So.2d 106, 107-08 (Ala.Crim.App.1991) (noting that the forcible taking of a gun from the person of another, by itself, satisfies the requirement of first-degreé robbery that the person be armed with a deadly weapon or dangerous instrument). Therefore, under the circumstances in this case, Lynch’s convictions for both first-degree robbery and second-degree theft for a single offense violated double-jfeopardy principles,’ and the circuit court erred in denying Lynch’s Rule 32 petition' as to this claim. “The proper remedy when a defendant is convictéd of both :a greater and a lesser-included offense is to vacate the conviction and sentence for the lesser-included ' offense.” Williams v. State, 104 So.3d 254, 265 (Ala.Crim.App.2012). Accordingly, Lynch’s conviction and sentence for second-degree theft of property must be vacated.[3]
*269 Based on the foregoing, we remand this case for the circuit court to grant Lynch’s petition as it relates to his conviction and sentence for second-degree theft of property. and to vacate that conviction and resulting sentence. Due return shall be filed within 42 days of the date of this opinion.
REMANDED WITH DIRECTIONS.*
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

. Lynch filed his first petition in 2010; the circuit court summarily dismissed the petition. This Court affirmed that dismissal on appeal, by -unpublished memorandum, Lynch v. State (No. CR-10-0077), 107 So.3d 232 (Ala.Crim.App.2011) (table).

. This Court may take judicial notice of its own records, and we do so in this case. See Nettles v. State, 731 So.2d 626, 629 (Ala. Crim.App.1998), and Hull v. State, 607 So.2d 369, 371 n. 1 (Ala.Crim.App.1992).

. “[I]t is unnecessary to remand this cáse to allow [Lynch] an opportunity to prove [his] double-jeopardy claim because the facts warranting relief on that claim are not in dispute .... [0]ur holding is not based on [Lynch's] mere allegations in [his] petition, but on the undisputed evidence present at [Lynch's] trial, of which .this Court has taken judicial notice.... Therefore, as both this Court and the Alabama Supreme Court have done numerous times in the past when the record is clear on its facts that a Rule 32 petitioner is entitled to relief, we grant that relief, rather’ than waste scarce judicial resources to remand for [Lynch] to present evidence that has already been presented to a *269 jury -and that is already before this Court by way of judicial notice.”
Williams, 104 So.3d at 265-66 n. 5.

 Note from the reporter of decisions: On September 2, 2016, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On December 9, ’2016, that court denied rehearing, without opinion. On February 10, 2017, the Alabama Supreme Court denied certiorari review, without opinion (1160224).