Rel: September 27, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

———————————————

## CR-2023-0953

———————————————

## Craig L. Newton

### v.

## State of Alabama

## Appeal from Macon Circuit Court
## (CC-01-49.60)

KELLUM, Judge.

The appellant, Craig L. Newton, appeals the Macon Circuit Court's summary dismissal of his petition for postconviction relief filed pursuant to Rule 32, Ala. R. Crim. P., attacking his capital-murder conviction and sentence of death.

In April 2006, Newton was convicted of murdering Charles Whatley during the course of a robbery, a murder defined as capital by § 13A-5-40(a)(2), Ala. Code 1975; of arson in the first degree, see § 13A-7-41, Ala. Code 1975; and of theft of property in the first degree, see § 13A-8-3(b), Ala. Code 1975. The jury recommended, by a vote of 10 to 2, that Newton be sentenced to death for the capital-murder conviction and the circuit court sentenced Newton to death. Newton was sentenced to 15 years in prison for the arson conviction and to 10 years in prison for the theft conviction.

In October 2009, this Court affirmed Newton's convictions and sentences on direct appeal. See <u>Newton v. State</u>, 78 So. 3d 458 (Ala. Crim. App. 2009). The Alabama Supreme Court and the United States Supreme Court denied certiorari review. See <u>Ex parte Newton</u>, (No. 1090213, August 19, 2011); <u>Newton v. Alabama</u>, 565 U.S. 1205 (2012). This Court issued the certificate of judgment on August 19, 2011. See Rule 41, Ala. R. App. P.

On August 14, 2012, Newton filed a timely Rule 32, Ala. R. Crim. P., petition attacking his convictions. See Rule 32.6(a), Ala. R. Crim. P. This petition was filed by the Equal Justice Initiative ("EJI"). One month

later, EJI moved to stay the proceedings stating that an out-of-state attorney was going to represent Newton and that EJI wished to withdraw. (C. 133.) In September 2012, New York attorney Joseph J. Perkovich filed a notice of appearance as new counsel representing Newton. In this motion, Perkovich stated that he would move for admission pro hac vice so that he could represent Newton in the case. (C. 151.) In September 2012, Newton moved for a status conference. (C. 154.)

The record shows no action on the petition was taken until March 2020, when a notice of appearance was filed by a new-to-the-case assistant attorney general. (C. 156.) That same month the parties filed a joint motion for a status conference. (C. 161.) In June 2020, Perkovich filed an application for admission to practice pro hac vice in the State of Alabama. (C. 186.) Newton then moved for discovery and funds to secure the services of experts. After several continuances and other delays, the case was set for a status conference in April 2023. (C. 328.) After the status hearing, the circuit issued an order setting a deadline on which to file amendments. (C. 387.)

On July 31, 2023, Newton filed an amended petition for postconviction relief. The State filed its response to that petition and argued that the issues in the petition were insufficiently pleaded or procedurally barred.[1] (C. 470.) On October 19, 2023, the postconviction court issued an order dismissing the amended petition. (C. 553.) On November 1, 2023, the court set aside its October 19 order after finding that Newton had not been timely served with the order of dismissal.[2] On that same day, the circuit court issued the same order dismissing the petition. (C. 570.) Newton then filed a timely notice of appeal to this Court.

On direct appeal, this Court quoted the circuit court's findings of fact:

> "'During the evening of April 30, 2001, the victim, Charles Clarence Whatley, and Chaundra

---

[1]The Alabama Supreme Court in <u>Ex parte Clemons</u>, 55 So. 3d 348, 356 (Ala. 2007), held that the procedural bars in Rule 32, Ala. R. Crim. P., are not jurisdictional and that to prevent waiver the State must plead the application of the procedural bars. It further recognized that only in extraordinary situations may a procedural bar be overcome by an appellate court acting sua sponte. In its answer to Newton's petition, the State pleaded the procedural bars in Rule 32, Ala. R. Crim. P.

[2]The postconviction court retained jurisdiction to modify the judgement for 30 days after the judgment was entered. See <u>Loggins v. State</u>, 910 So. 2d 146, 147 (Ala. Crim. App. 2005)

Alexander got together and started smoking crack cocaine at Alexander's residence. ... [O]n the morning of May 1, 2001, they ran out of drugs and started looking for more. While looking for drugs they went to a residence in Tuskegee, Alabama, and encountered the Defendant, Craig Newton. [Newton] said he could take them to get some more drugs.

"'On the way to get the drugs, victim, Alexander and [Newton] stopped at the residence of the victim. Once at Whatley's residence, [Newton] demanded that the victim give him all of his money and tell him where the guns were in the house. [Newton] also instructed Alexander to tie the victim up with an electrical cord.

"'When the victim tried to free himself from the cord, [Newton] put a bag over the victim's head in an attempt to suffocate him. When he began to free himself from the plastic bag, [Newton] then poured gasoline or lighter fluid on his head and set the victim on fire while continuing to demand the whereabouts of the victim's weapons and money. The codefendant testified that the victim had extinguished the fire on himself when [Newton] approached the victim, put a pistol to the side of his head and shot him. Victim died from a gunshot wound to the head.

"'[Newton] and Alexander loaded at least four rifles and/or shotguns and other miscellaneous items from the house onto the victim's truck and left the residence. They returned to the location where the victim and Alexander had picked up [Newton] and unloaded the weapons and other items. Milton Anderson was at this residence and assisted in unloading the

5

weapons. He saw [Newton] and Alexander and heard them arguing about how to divide up the property. [Newton] also told Anderson what he had done.

"'The victim's residence was severely damaged by fire. The victim's body was also severely burned and was only able to be identified through the use of dental records.

"'Chaundra Alexander entered a plea of guilty to the reduced charge of murder for her role in the death of the victim, Charles Clarence Whatley, and is the codefendant of this defendant.'"

Newton v. State, 78 So. 3d at 463.[3]

## Standard of Review

As stated above, Newton appeals the postconviction court's order summarily dismissing his petition for postconviction relief filed pursuant to Rule 32, Ala. R. Crim. P. Newton filed the petition in the circuit court of the county where he was convicted, and he bears the sole burden of pleading his claims.

"The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. The state shall have the burden of pleading any ground of preclusion, but

---

[3]This Court has taken judicial notice of the record in Newton's direct appeal. See Nettles v. State, 731 So. 2d 626, 629 (Ala. Crim. App. 1998).

6

once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence."

As this Court stated in Boyd v. State, 913 So. 2d 1113 (Ala. Crim. App. 2003):

> "'Rule 32.6(b)[, Ala. R. Crim. P.,] requires that the petition itself disclose the facts relied upon in seeking relief.' Boyd v. State, 746 So. 2d 364, 406 (Ala. Crim. App. 1999). In other words, it is not the pleading of a conclusion 'which, if true, entitle[s] the petitioner to relief.' Lancaster v. State, 638 So. 2d 1370, 1373 (Ala. Crim. App. 1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R. Crim. P., to present evidence proving those alleged facts."

Boyd, 913 So. 2d at 1125.

The burden of pleading in a postconviction proceeding, which is considered civil in nature, is not the same as the burden of pleading in a civil action. Indeed, the burden as it relates to postconviction petitions has been characterized as a heavy burden. Hyde v. State, 950 So. 2d 344, 356 (Ala. Crim. App. 2006).

> "Although postconviction proceedings are civil in nature, they are governed by the Alabama Rules of Criminal Procedure. See Rule 32.4, Ala. R. Crim. P. The 'notice pleading' requirements relative to civil cases do not apply to Rule 32 proceedings. 'Unlike the general requirements related to civil cases, the pleading requirements for

7

postconviction petitions are more stringent. ...' Daniel v. State, 86 So. 3d 405, 410-11 (Ala. Crim. App. 2011). Rule 32.6(b), Ala. R. Crim. P., requires that full facts be pleaded in the petition if the petition is to survive summary dismissal. See Daniel, supra. Thus, to satisfy the requirements for pleading as they relate to postconviction petitions, Washington was required to plead full facts to support each individual claim."

Washington v. State, 95 So. 3d 26, 59 (Ala. Crim. App. 2012).

Moreover, a postconviction court may summarily dismiss a petition where the pleadings are insufficient.

"If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing."

Rule 32.7(d), Ala. R. Crim. P.

"'"Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition."' Bishop v. State, 608 So. 2d 345, 347-48 (Ala. 1992) (emphasis added) (quoting Bishop v. State, 592 So. 2d 664, 667 (Ala. Crim. App. 1991) (Bowen, J., dissenting)). See also Hodges v. State, 147 So. 3d 916, 946 (Ala. Crim. App. 2007) (a postconviction claim is 'due to be summarily dismissed [when] it is meritless on its face')."

8

Bryant v. State, 181 So. 3d 1087, 1102 (Ala. Crim. App. 2011).

> "'[T]he sufficiency of pleadings in a Rule 32 petition is a question of law. "The standard of review for pure questions of law in criminal cases is de novo. Ex parte Key, 890 So. 2d 1056, 1059 (Ala. 2003)."' Ex parte Beckworth, [190 So. 3d 571 (Ala. 2013)] (quoting Ex parte Lamb, 113 So. 3d [686] at 689 [Ala. 2011)]). 'Legal conclusions are never accorded a presumption of correctness on appellate review.' Ex parte Cain, 838 So. 2d 1020, 1026 (Ala. 2002) (citing Ex parte Perkins, 646 So. 2d 46, 47 (Ala. 1994)). 'When applying the de novo standard of review, this Court is not obligated to rely on the same analysis as that employed by the trial court.' State v. C.M., 746 So. 2d 410, 414 (Ala. Crim. App. 1999) (citing Ex parte Graham, 702 So. 2d 1215, 1221 (Ala. 1997))."

Stallworth v. State, 171 So. 3d 53, 66 (Ala. Crim. App. 2013).

Last, "[o]n direct appeal we reviewed the record for plain error; however, the plain-error standard of review does not apply to a Rule 32 proceeding attacking a death sentence." Ferguson v. State, 13 So. 3d 418, 424 (Ala. Crim. App. 2008).

With these principles in mind, we review the issues raised by Newton in his brief to this Court.

## I.

Newton first argues that the postconviction court erred in denying him leave to amend his postconviction petition. In a three-paragraph argument in his brief to this Court, Newton asserts that, although

9

amendments to postconviction petitions are within the discretion of the postconviction court, those amendments "should be freely granted" and "only grounds such as actual prejudice or undue delay will support a trial court's refusal to allow, or to consider, an amendment to a Rule 32 petition."   (Newton's brief at pp. 13-14.)   He relies on the Alabama Supreme Court's decision in Ex parte Rhone, 900 So. 2d 455 (Ala. 2004), to support his argument.

In discussing its holding in Rhone, the Alabama Supreme Court has stated:

> "[A] petitioner does not have the unfettered right to file endless amendments to a Rule 32 petition.  The right to amend is limited by the trial court's discretion to refuse to allow an amendment if the trial court finds that the petitioner has unduly delayed filing the amendment or that an amendment unduly prejudices the State.  Such an exercise of the trial court's discretion would certainly be appropriate, for example, if, on the eve of an evidentiary hearing, a Rule 32 petitioner filed an amendment that included new claims of which the State had no prior notice and as to which it was not prepared to defend.
>
> "We emphasize that the concepts of 'undue delay' and 'undue prejudice' as discussed in this opinion and in Ex parte Rhone apply to the trial court's management of its docket and to the petitioner's attention to his or her case."

Ex parte Jenkins, 972 So. 2d 159, 163 (Ala. 2005). See also Ex parte Apicella, 87 So. 3d 1150 (Ala. 2011); Ex parte Woods, 957 So. 2d 583 (Ala. 2006).

In Rhone, the Court recognized that amendments to postconviction petitions should be freely allowed unless those amendments will result in undue delay of the postconviction proceedings. The Court also specifically noted that Rhone had moved to amend his petition to add 10 additional claims of ineffective assistance of counsel and that, after the petition had been denied, Rhone filed a motion to alter, amend or vacate the order of dismissal so that the postconviction court could address those additional amended claims.

However, in this case, the record shows that Newton's original petition was filed in August 2012. New counsel filed a notice of appearance in September 2012. No filings were made from September 2012 until March 2020, when a joint motion for a status conference was filed. Counsel then filed a lengthy amended petition in July 2023. At the conclusion of the 68-page amended petition, in the request-for-relief section, Newton asked that he be allowed to "amend this petition." (C.

458.) The record shows that no formal motion to amend the petition or any other reference was made to amending the pleadings.

The record further shows that in April 2023, the postconviction court issued an order that stated, in part: "Deadline to file any amendment(s) of pleadings is July 28, 2023. The Court notes this matter has been pending over a decade; therefore, absent exceptionally, extraordinary good cause, no extension will be granted, and the case will issue ruling on whatever matters are pending on July 28, 2023." (C. 387.) Newton was given leave to file an amended petition and did file an amended petition in July 2023. (C. 391.) That petition was addressed in the postconviction court's order of dismissal.

Unlike the defendant in Rhone, Newton did not file a separate motion to amend his petition, nor did he file a postjudgment motion addressing the postconviction court's failure to allow the petition to be amended a second time. Also, the original petition was filed in 2012 and the first amended petition was filed in July 2023. Based on the length of time that had elapsed in this case and the fact that an amended petition had been filed and considered by the postconviction court, we cannot say that the postconviction court abused its discretion in setting a time

12

within which to file any amended pleadings. Accordingly, we find that Newton is due no relief on this claim.

II.

Newton next argues that the postconviction court erred in denying his motions for discovery and for funds for investigative and expert resources for his postconviction proceedings. Specifically, he argues that he requested discovery in the form of records from various agencies concerning the investigation and prosecution of the case against Newton and his two codefendants and that motion, he argues, was improperly denied. Newton also argues that in his amended petition he pleaded that various experts were needed to investigate his claims in his postconviction petition: a forensic pathologist, a crime-scene reconstruction expert, a forensic investigator, a forensic neuropsychologist, a forensic psychiatrist, and a forensic psychologist. He asserts that the postconviction court erred in denying his request for funds to hire these experts.

The State asserts that the postconviction court properly denied the motions for discovery and funds for experts for the reasons set out in Newton's request for funds. Newton asserted that the discovery and

experts were necessary to "develop his post-conviction claims. ..." (C. 294.)

## A.

Newton first argues that the postconviction court erred in denying his motion for funds to secure the services of numerous experts so that he could investigate in preparation for the postconviction proceedings. Specifically, he argues that he was entitled to an ex parte hearing on his request for funds and that the court erred in not explaining its reason for denying that discovery motion. He contends that "he set forth the need" for a forensic pathologist, a crime-scene reconstructionist, a forensic investigator, a forensic neuropsychologist, a special-education expert, a forensic psychiatrist, a neurologist, and a neuroimaging expert.

The record shows that in 2022, postconviction-counsel filed a motion for leave to conduct an ex parte hearing to request funds to retain experts to investigate Newton's postconviction claims. (C. 293-96.) The State objected to Newton's motion and argued that the petition was due to be dismissed and that, therefore, funds should not be granted. (C. 306-11.) The motion for funds was denied. (C. 387.)

First, Newton was not entitled to an ex parte hearing on his request for expert funds in this case.

> "Contrary to McGahee's assertions, the trial court was not obliged to allow him to proceed ex parte in his request for funds to pursue his postconviction claims. McGahee's reliance on Ake v. Oklahoma[,470 U.S. 68 (1985),], is misplaced because postconviction proceedings pursuant to Rule 32, Ala. R. Crim. P., are not criminal in nature. McGahee, himself, pursued this discretionary legal action against the State of Alabama, and the action is civil in nature. See Hamm v. State, [913 So. 2d 460] (Ala. Crim. App. 2002), and cases cited therein."

McGahee v. State, 885 So. 2d 191, 229 (Ala. Crim. App. 2003). See also James v. State, 61 So. 3d 357, 383 (Ala. Crim. App. 2010) ("[T]he circuit court did not commit reversible error in denying James's … motion to proceed ex parte in his request for funds for expert assistance for his postconviction proceedings.").

Moreover,

> "This Court held that the fundamental fairness mandated by the Due Process Clause does not require the trial court to approve funds for experts at a postconviction proceeding. Hubbard v. State, 584 So. 2d 895, 900 (Ala. Crim. App. 1991). Moreover, this Court has specifically held that Ake [v. Oklahoma[, 470 U.S. 68 (1985),] is not applicable in postconviction proceedings. Ford v. State, 630 So. 2d 111, 112 (Ala. Crim. App. 1991), aff'd, 630 So. 2d 113 (Ala. 1993). See also Williams v. State, 783 So. 2d 108 (Ala. Crim. App. 2000), aff'd, 662 So. 2d 929 (Ala. 1992) (table).

15

"McGahee's reliance on Ex parte Moody, 684 So. 2d 114 (Ala. 1996), is misplaced. In Moody, the Alabama Supreme Court held that 'an indigent criminal defendant is entitled to an ex parte hearing on whether expert assistance is necessary, based on the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.' 684 So. 2d at 120. As discussed above, for purposes of this proceeding, McGahee is not 'an indigent criminal defendant.' Instead, he is a convicted capital murderer who, in Rule 32 proceedings, is a civil petitioner with the burden of proving that he is entitled to relief on the grounds alleged in the petition he filed. Moody does not support McGahee's argument here. McGahee is not entitled to any relief on this claim of error. The trial court did not err when it denied an ex parte hearing on McGahee's request for funds."

McGahee, 885 So. 2d at 229. See White v. State, 343 So. 3d 1150, 1164 (Ala. Crim. App. 2019) ("This Court has held that the provisions of Ake v. Oklahoma, [470 U.S. 68 (1985),] do not apply to postconviction petitions or collateral petitions. The circuit court committed no error in denying both of White's motions for funds for experts to assist in the postconviction proceedings."); Thompson v. State, 310 So. 3d 850, 885 (Ala. Crim. App. 2018) ("Alabama has not extended the right to expert assistance required by Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), to postconviction proceedings."); Van Pelt v. State, 202 So. 3d 707, 719-20 (Ala. Crim. App. 2015) ("'"Rule 32 petitioners are not entitled to funds to hire experts to assist in postconviction litigation,

16

ex parte or otherwise[;] the trial court did no err in denying the motion."'"); Bush v. State, 92 So. 3d 121, 167 (Ala. Crim. App. 2009) ("'Because the law is clear that Rule 32 petitioners are not entitled to funds to hire experts to assist in postconviction litigation, ex parte or otherwise, the trial court did not err in denying the motion.'").

Other states have also found that a postconviction petitioner has no right to funds for experts. See also State v. Simpson, 61 N.E.3d 899, 904 (Ohio Ct. App. 2016) ("We see no error in the trial court's denial of Simpson's motion for the appointment of an expert in connection with his petition for post-conviction relief. The short answer to his argument is that he had no right, statutory or constitutional, to the appointment of an expert to assist in his post-conviction relief petition. This court has held that 'indigent prisoners are not entitled to funding for experts when pursuing collateral attacks on their convictions.'"); People v. Richardson, 189 Ill. 2d 401, 422, 245 Ill. Dec. 109, 122, 727 N.E.2d 362, 375 (2000) ("Since a post-conviction petitioner does not have a constitutional right to appointed counsel … there is no constitutional obligation to provide post-conviction counsel with investigative resources.").

The postconviction court did not abuse its discretion in denying Newton's motion for funds for Newton to retain experts for the postconviction proceedings. Accordingly, Newton is due no relief on this claim.

B.

Newton next argues that the postconviction court erred in not granting his request for discovery from numerous State agencies. The discovery motion named the following offices: the Alabama Fire Marshal's Office, Tuskegee Fire Department, Tuskegee Police Department, Macon County Sheriff's Department, Macon County jail, Macon County Medical Examiner and Coroner, and the District Attorney's office in Macon County.

The record shows that in 2022, Newton moved for discovery from the agencies named above. (C. 286-90.) The State objected and argued that each claim in the petition was due to be dismissed and, thus, that discovery should be denied based on this Court's holding in State v. Martin, 4 So. 3d 1196, 1198 (Ala. Crim. App. 2008). (C. 299-303.)[4] The

_____

[4]The Martin Court held that a motion for discovery in a postconviction proceeding is properly denied if the claims in the petition are procedurally barred. State v. Martin, 4 So. 3d at 1198.

18

State then moved that the postconviction court withhold ruling on the discovery motion until it had considered the merits of the issues in the petition. (C. 315-19.) The motion for discovery was denied. (C. 387.)

The Alabama Supreme Court in Ex parte Land, 775 So. 2d 847 (Ala. 2000), first recognized that there is no absolute right to discovery in a postconviction proceeding and that to be entitled to discovery the petitioner must establish "good cause." The Land Court stated: "We emphasize that this holding -- that postconviction discovery motions are to be judged by a good-cause standard -- does not automatically allow discovery under Rule 32, Ala. R. Crim. P., and that it does not expand the discovery procedures within Rule 32.4."[5] Land, 775 So. 2d at 852. Consistent with the holding in Land, to determine whether a petitioner is entitled to discovery, we must examine the issues that are raised in the postconviction petition.

> "'[P]ostconviction discovery does not provide a petitioner with a right to "fish" through official files and ... it "is not a device

---

[5]"Rule 32.4, Ala. R. Crim. P., states: "A proceeding under this rule displaces all post-trial remedies except post-trial motions under Rule 24 and appeal. Any other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under this rule. Proceedings under this rule shall be governed by the Rules of Criminal Procedure, except that the trial court in its sole discretion may allow the taking of dispositions for discovery or for use at trial."

19

for investigating possible claims, but a means of vindicating actual claims."' Id. Thus, '[t]he threshold issue in a good-cause inquiry is whether the Rule 32 petitioner has presented claims that are facially meritorious.' Ex parte Turner, 2 So. 3d 806, 812 (Ala. 2008), overruled on other grounds by State v. Martin, 69 So. 3d 94 (Ala. 2011). A claim is facially meritorious 'only if the claim (1) is sufficiently pleaded in accordance with Rule 32.3 and Rule 32.6(b); (2) is not precluded by one of the provisions in Rule 32.2; and (3) contains factual allegations that, if true, would entitle the petitioner to relief.' Kuenzel v. State, 204 So. 3d 910, 914 (Ala. Crim. App. 2015). A Rule 32 petitioner is not entitled to discovery on claims that are not facially meritorious, i.e., on claims that are subject to summary dismissal. See, e.g., Morris v. State, 261 So. 3d 1181, 1202 (Ala. Crim. App. 2016) ('Morris was not entitled to discovery, because the claims for which he sought discovery were either insufficiently pleaded, procedurally barred, or meritless, and they were dismissed.'); Van Pelt v. State, 202 So. 3d 707, 720 (Ala. Crim. App. 2015) ('Because we conclude ... that Van Pelt's claims were insufficiently pleaded and that summary dismissal was appropriate, Van Pelt did not show 'good cause' to be entitled to discovery on those claims.'); and Yeomans v. State, 195 So. 3d 1018, 1051 (Ala. Crim. App. 2013) ('Our opinion today affirms the summary dismissal of all claims on which Yeomans sought discovery; therefore, Yeomans did not show 'good cause' to be entitled to discovery on those claims.').

"Once a Rule 32 petitioner satisfies the threshold of raising a facially meritorious claim, the court must then determine whether there is good cause for the discovery. In determining whether there is good cause, a court should consider '"the scope of the requested discovery, the length of time between the conviction and the post-conviction proceeding, the burden of discovery on the State and on any witnesses, and the availability of the evidence through other sources."' Ex parte Mack, 894 So. 2d 764, 768 (Ala. 2003), overruled on other grounds by Ex parte Jenkins, 972 So. 2d

20

159 (Ala. 2005) (quoting <u>People v. Johnson</u>, 205 Ill. 2d 381, 408, 275 Ill. Dec. 820, 793 N.E.2d 591, 607-08 (2002) (emphasis omitted))."

<u>Woodward v. State</u>, 276 So. 3d 713, 734-35 (Ala. Crim. App. 2018).

"'This authority [to order discovery in postconviction proceedings] must be exercised with caution, because of the potential for abuse of the discovery process and because of the limited scope of postconviction proceedings.' <u>People v. Williams</u>, 209 Ill. 2d 227, 236, 282 Ill. Dec. 824, 830, 807 N.Ed.2d 448, 454 (2004). '[T]he range of issues in a post-conviction proceeding is relatively narrow, and discovery requirements are correspondingly limited.' <u>People ex rel. Daley v. Fitzgerald</u>, 123 Ill. 2d 175, 182, 121 Ill. Dec. 937, 940, 526 N.E.2d 131, 134 (1988)."

<u>Jackson v. State</u>, 910 So. 2d 797, 803 (Ala. Crim. App. 2005).

The majority of the claims raised in Newton's petition were based on speculation, i.e., what might have been revealed had counsel acted differently. The discovery motion appeared to be a "fishing expedition." As the Alabama Supreme Court cautioned in <u>Ex parte Land</u>:

"By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to 'fish' through official files and that it 'is not a device for investigating possible claims, but a means of vindicating actual claims.' <u>People v. Gonzalez</u>, 51 Cal. 3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal. Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner

21

> must allege facts that, if proved, would entitle him to relief. Cf. <u>Porter v. Wainwright</u>, 805 F.2d 930, 933 (11th Cir. 1986) ('a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief'), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987)."

<u>Land</u>, 775 So. 2d at 852. A postconviction court does not abuse its discretion in denying a discovery request that is in the nature of a "fishing expedition." See <u>State v. Stallworth</u>, 941 So. 2d at 334.

For the reasons set out in this opinion, we hold that the postconviction court did not err in denying Newton's request for discovery because the claims were either insufficiently pleaded or procedurally barred. See <u>State v. Martin</u>, supra. Accordingly, Newton is due no relief on this claim.

## III.

Newton next argues that the postconviction court erred in summarily dismissing his postconviction petition. As stated above, many of the issues raised in the petition are claims that Newton's counsel rendered ineffective assistance at Newton's capital-murder trial and sentencing hearing.

> "To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must 'identify the [specific] acts or omissions of counsel that are alleged not to

have been the result of reasonable professional judgment,' Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient."

Hyde v. State, 950 So. 2d at 356.

"[I]n considering whether [the petitioner's] claims of ineffective assistance of counsel were sufficiently pleaded, the circuit court properly considered each claim individually." Mashburn v. State, 148 So. 3d 1094, 1117 (Ala. Crim. App. 2013).

## A.

Newton first argues that the postconviction court erred in summarily dismissing many of his claims after finding that the claims were insufficiently pleaded.

As stated above, the burden of pleading in a postconviction petition is a heavy burden. Hyde v. State, 950 So. 2d at 356. "The pleading requirements of Rule 32 apply equally to capital cases in which the death penalty has been imposed." Taylor v. State, 157 So. 3d 131, 140 (Ala. Crim. App. 2010).

23

We are aware that at the pleading stage of the postconviction proceedings, a claim may not be dismissed for a petitioner's failure to meet his burden of proof. As this Court has stated:

"It is well settled that a postconviction 'claim may not be summarily dismissed because the petitioner failed to meet his burden of proof at the initial pleading stage, a stage at which the petitioner has only the burden to plead.' Johnson v. State, 835 So. 2d 1077, 1080 (Ala. Crim. App. 2001). As this Court explained in Ford v. State, 831 So. 2d 641 (Ala. Crim. App. 2001):

"'[A]t the pleading stage of Rule 32 proceedings, a Rule 32 petitioner does not have the burden of proving his claims by a preponderance of the evidence. Rather, at the pleading stage, a petitioner must provide only "a clear and specific statement of the grounds upon which relief is sought." Rule 32.6(b), Ala. R. Crim. P. Once a petitioner has met his burden of pleading so as to avoid summary disposition pursuant to Rule 32.7(d), Ala. R. Crim. P., he is then entitled to an opportunity to present evidence in order to satisfy his burden of proof.'

"831 So. 2d at 644."

Bryant v. State, 181 So. 3d at 1101. Also, "[a] circuit court may, in some circumstances, summarily dismiss a postconviction petition based on the merits of the claims raised therein." Bryant v. State, 181 So. 3d at 1102.

24

1.

First, Newton argues that the postconviction court erred in dismissing his claim that his trial counsel was ineffective for failing to present a coherent theory of defense because, he says, the court merely offered a "string cite, with no analysis." (Newton's brief at p. 23.)[6] He argues that he adequately pleaded his claim that trial counsel failed to present any theory of the case that attacked the version of events offered by his codefendant, Chaundra Alexander.[7]

In his amended petition, Newton pleaded, in part:

> "Counsel did not offer a theory for the jury to find that Newton either did not participate in the crime or had a different role in the offense than that claimed by [Chaundra] Alexander. Counsel presented no alternative theory of the crime or Newton's role. This constituted deficient performance. Newton was prejudiced by counsel's deficient performance because if counsel had presented a coherent theory of defense, there is a reasonable likelihood that the outcome of Newton's trial would have been different."

(C. 396-97.)

---

[6]"[W]hen reviewing a circuit court's rulings made in a postconviction petition, we may affirm a ruling if it is correct for any reason." Bush v. State, 92 So. 3d 121, 133 (Ala. Crim. App. 2009).

[7]The trial record shows that Attorney Thomas Goggins was appointed to represent Newton in August 2001, and that cocounsel, Attorney Andrew Skier, was appointed in June 2002.

When dismissing this claim, the postconviction court found that Newton's pleadings were conclusory and unsupported by any facts.

> "This claim in insufficiently pleaded. A Rule 32 petitioner must plead facts, not a conclusion, that would entitle him to relief. In an [ineffective-assistance-of-counsel] claim, the petitioner must plead facts that meet both prongs of the Strickland [v. Washington, 466 U.S. 668 (1984),] test for [ineffective assistance of counsel. This Court cannot determine whether Newton is entitled to relief based on the pleading, which amounts to a conclusory assertion."

(C. 571.)

This claim was properly dismissed because Newton failed to plead the full facts to support the claim as required by Rule 32.6(b), Ala. R. Crim. P. Newton failed to plead what counsel should have done or what alternative theory of the case counsel should have presented at Newton's trial. In a similar case, this Court stated:

> "Washington next argues that the circuit court erred in summarily dismissing his claim that counsel failed to state a 'coherent theory of defense.' Specifically, he argues that witnesses who would have 'helped shape a defense theory' should have been interviewed. Washington failed to plead what that 'coherent theory' might have been.
>
> "....
>
> "Washington failed to plead sufficient facts in regard to this claim. He failed to identify any alleged errors that resulted in his counsel's performance being deficient. Nor did he plead what counsel should have done to be effective.

26

Washington failed to satisfy the full-fact-pleading requirements of Rule 32.2(b), Ala. R. Crim. P."

Washington v. State, 95 So. 3d at 66-67.

Also, the record on direct appeal shows that in the opening statement defense counsel attacked the credibility of Alexander, Newton's codefendant. Counsel also conducted a lengthy cross-examination of Alexander. (Trial Record, R. 702-37; 740-45.) Again, in closing, defense counsel attacked Alexander's credibility. Clearly, attacking Alexander's credibility was counsel's trial strategy.

> "'"[T]he mere existence of a potential alternative defense theory is not enough to establish ineffective assistance based on counsel's failure to present that theory."' Hunt v. State, 940 So. 2d 1041, 1067 (Ala. Crim. App. 2005), quoting Rosario-Dominguez v. United States, 353 F. Supp. 2d 500, 513 (S.D.N.Y. 2005). 'Hindsight does not elevate unsuccessful trial tactics into ineffective assistance of counsel.' People v. Eisemann, 248 A.D.2d 484, 484, 670 N.Y.S.2d 39, 40-41 (1998)."

Davis v. State, 44 So. 3d 1118, 1132 (Ala. Crim. App. 2009). See also Hunt v. State, 940 So. 2d 1041, 1067 (Ala. Crim. App. 2005).

The postconviction court did not err in finding that this claim was insufficiently pleaded pursuant to Rule 32.6(b), Ala. R. Crim. P., and due to be dismissed on that basis. Therefore, Newton is due no relief on this claim.

27

2.

Newton next argues that the postconviction court erred in dismissing his claim that his trial counsel was ineffective for failing to adequately challenge and cross-examine state witnesses. Specifically, Newton pleaded that his trial counsel did not effectively cross-examine his codefendant Alexander because, he says, counsel failed to question her about a statement that Joe Henry had given to police after the murder. Henry told police that someone told him that Alexander's brother committed the murder. Newton also pleaded that his counsel was ineffective for failing to effectively cross-examine Milton Anderson. At Newton's trial, Anderson testified that Newton told him on the day after the murder that he had killed somebody.

When summarily dismissing this claim, the postconviction court stated:

> "Newton bears the burden of pleading how a reasonable attorney would have modified, added, subtracted, or otherwise changed the challenge to the State's case, and further pleaded how this discrepancy undermined the confidence in the verdict. Challenges to the weight of the evidence or credibility of witnesses has no bearing on the effectiveness of counsel as those are jury questions. Further, the 'method and scope of cross examination is a paradigm of the type of tactical decisions that ordinarily cannot be challenged as evidence of [ineffective assistance of counsel].'

28

... Newton must proffer the testimony that would have been elicited and how that might have changed the outcome of the case, which he did not do. ... Newton's claim is conclusory and unsupported, and he is entitled to no relief on this basis."

(C. 572.) We agree with the postconviction court's findings. Newton failed to plead what counsel should have done during cross-examination to be effective -- he failed to plead what questions should have been asked of the witnesses. As this Court recently stated:

"In Stanley v. State, 335 So. 3d 1, 21 (Ala. Crim. App. 2020), this Court addressed a similar claim alleging that trial counsel was ineffective for failing to adequately cross-examine a State's witness. The circuit court in Stanley, just as the circuit court did here, found that Stanley's claim was insufficiently pleaded in part because Stanley failed to plead facts showing what the answers to the unasked questions would have been had his counsel asked those questions on cross-examination. This Court agreed with the circuit court's judgment and affirmed its conclusion that Stanley's claim was insufficiently pleaded.

"Here, not only did Wilson fail to allege what answers the State's expert witnesses would have given had counsel cross-examined them differently, Wilson also failed to allege what questions his counsel should have asked to those expert witnesses. And to the extent that Wilson alleged that his counsel were ineffective for failing to retain expert assistance to aid in questioning the State's expert witnesses, Wilson did not identify by name any expert his counsel should have hired. Thus, the circuit court properly found that Wilson's claim was insufficiently pleaded."

29

Wilson v. State, [Ms. CR-21-0109, June 28, 2024] ___ So. 3d ___, ____ (Ala. Crim. App. 2024).

Moreover, the trial record shows that in September 2002, trial counsel moved for a continuance and asserted in that motion that a continuance was necessary so that he could investigate Henry's statement, a copy of which he had recently received from the State. (Trial Record, C. 77-78.)[8]   Henry's statement read, in part: "Curtis Howard's brother told me that he was there when they robbed the white guy on 29 S.  He said the girl burned up about twenty thousand dollars in a brown paper bag and said that Matthew Alexander is the one who shot the man." (Trial Record, C. 79.)  Newton was not tried until April 2006.  Trial counsel had almost three years to investigate the statement.  Also, during Alexander's cross-examination, defense counsel admitted certified copies of Alexander's three prior felony convictions.  (Trial Record, R. 726.) Counsel also questioned Alexander concerning her plea agreement with the State and about the statements that she had given to police.  Defense

---

[8]A copy of Henry's statement was attached to Newton's motion for a continuance.  (Trial Record, C. 77-83.)

counsel's cross-examination of Alexander was extensive. (Trial Record, R. 725-60; 763-67.)

The trial record further shows that Milton Anderson testified that Newton and Alexander came by his house on the evening of the murder and asked him to help them unload the truck they were driving. Anderson said that there were four .12-gauge shotguns and two pistols in that truck. (Trial Record, R. 774.) Anderson testified that Newton came to his house the next morning:

> "[Prosecutor]: Tell the members of the jury what happened when [Newton] came back?
>
> "[Anderson]: Well, he came back. We had a little discussion about what had happened, you know, what had took place.
>
> "[Prosecutor]: And what did he tell you had took place?
>
> "[Anderson]: Told me he had killed a dude.
>
> "[Prosecutor]: Did he tell you who the dude was?
>
> "[Anderson]: No.
>
> "[Prosecutor]: Did he say why he killed him?
>
> "[Anderson]: Say, [Alexander] had told him the dude had a lot of guns and money or something.
>
> "[Prosecutor]: Okay. And he said he killed him for the guns and money?

31

"[Anderson]: Yes, sir."

(Trial Record, R. 774.) Anderson was cross-examined about his two prior felony convictions and the statements that he had made at the preliminary hearing. (Trial Record, R. 775-781.)

It is clear from the trial record that counsel was aware of Henry's statement to police. Also, Henry had no personal knowledge concerning the truth of his statement because it was based on what another person told him and was hearsay. See Rule 802, Ala. R. Evid. Nothing in Newton's pleadings suggests that Henry's statement would have been admissible. See Rule 803, Ala. R. Evid. Nor did Newton plead who could have testified to the content of Henry's hearsay statement to police.

Furthermore,

"'[d]ecisions regarding whether and how to conduct cross-examinations and what evidence to introduce are matters of trial strategy and tactics.' Rose v. State, 258 Ga. App. 232, 236, 573 S.E.2d 465, 469 (2002). '"'[D]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature.'"' Hunt v. State, 940 So. 2d 1041, 1065 (Ala. Crim. App. 2005), quoting Rosario-Dominguez v. United States, 353 F. Supp. 2d 500, 515 (S.D.N.Y. 2005), quoting in turn, United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). 'The decision whether to cross-examine a witness is [a] matter of trial strategy.' People v. Leeper, 317 Ill. App. 3d 475, 483, 740 N.E.2d 32, 39, 251 Ill. Dec. 202, 209 (2000)."

A.G. v. State, 989 So. 2d 1167, 1173 (Ala. Crim. App. 2007). "'"[T]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel."' Bonner v. State, 308 Ga. App. 827, 828, 709 S.E.2d 358, 360 (2011) (quoting Cooper v. State, 281 Ga. 760, 762, 642 S.E.2d 817, 820 (2007))." Stanley v. State, 335 So. 3d 1, 37 (Ala. Crim. App. 2020).

The postconviction court correctly found that this claim was due to be dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P. For these reasons, Newton is due no relief on this claim.

3.

Newton next argues that his trial counsel was ineffective for failing to investigate, develop, and present evidence that a third party had been involved in the murder. In regard to this claim, Newton pleaded, in part:

> "The statement of Joe Henry, given to police three months after the crime was committed, indicated that Alexander's brother, Matthew Alexander, had committed the murder while robbing the victim with Alexander. According to Henry, 'Curtis Howard[s] brother told [Henry] that he was there when they robbed the white guy on 29 S. Henry stated that Howard's brother also said that Alexander had instructed her brother Matthew to shoot the victim because the victim knew who she was. Henry stated that Howard's brother did not implicate Newton in the crime and that Henry saw Newton in jail, where Newton told him he was being held for something he did not do."

33

(C. 400.) Newton further pleaded that counsel should have investigated Michael Benson, who reportedly told members of the community that he had committed the murder. (C. 400.) Last, Newton pleaded that trial counsel failed to contact a "single alibi or character witness who had spent time with Newton in the days around when the crime occurred. These potential witnesses include Pearl Riley, Brittney Sparks, Angie Lewis, and Tonya Bell." (C. 400-401.)

In dismissing this claim, the postconviction court made the following finding: "Newton fails to plead what trial counsel should have done and must proffer the testimony that would have been elicited and how that might have changed the outcome of the case, which he did not do. … Newton's claim is conclusory and unsupported, and he is entitled to no relief on this basis." (C. 572.)

First, as noted above, Henry's statement was not that he had personal knowledge that someone else had committed the murder but rather was that another person had told him that someone else had committed the murder. Henry's statement was classic hearsay. "We have traditionally held that an accused may not prove the guilt of another by presenting hearsay evidence." Johnson v. State, 820 So. 2d 842, 866

34

(Ala. Crim. App. 2000). In Ex parte Griffin, 790 So. 2d 351 (Ala. 2000), the Alabama Supreme Court recognized an exception to this traditional rule:

> "[T]his Court has set out a test intended to ensure that any evidence offered for this purpose is admissible only when it is probative and not merely speculative. Three elements must exist before this evidence can be ruled admissible: (1) the evidence 'must relate to the "res gestae" of the crime'; (2) the evidence must exclude the accused as a perpetrator of the offense; and (3) the evidence 'would have to be admissible if the third party was on trial.' See Ex parte Walker, 623 So. 2d [281] at 284 [(Ala. 1992)], and Thomas [v. State], 539 So. 2d [375] at 394-96 [(Ala. Crim. App. 1988)]."

Griffin, 790 So. 2d at 354. Newton pleaded no facts that would support the admission of the hearsay statement under the Griffin factors.

Moreover,

> "[f]or [the appellant] to meet his burden of pleading his claims that his counsel was ineffective for failing to present the testimony of a certain witness, he must plead, among other things, facts establishing the following: (1) the identity of the witness; (2) the content of the witness's expected testimony; (3) that the testimony was favorable to the defendant; (4) that the witness was available to testify at [the petitioner's] trial and would have testified; and (5) that a reasonable investigation would have led counsel to the witness."

Stallworth v. State, 171 So. 3d at 68. Newton failed to plead any facts that would satisfy the factors set out in Stallworth. Though he identified several potential witnesses by name, he did not plead their expected

testimony or how that testimony could have benefited him.  We agree with the postconviction court that Newton failed to plead the full facts in support of this claim.  Thus, summary dismissal was proper.

Second, in regard to the pleadings concerning Michael Beason, Newton's entire pleading states: "Counsel also failed to adequately investigate Michael Beason, who reportedly told members of the community that he had committed the crime.  Counsel made only a perfunctory effort to locate Beason and abandoned the search after his initial failure." (C. 400.)  Clearly, Newton failed to plead the full facts in support of this claim.  He failed to plead any facts concerning Beason's statement, failed to plead how this testimony would have been presented at trial, and failed to plead how he was prejudiced by counsel's failure to present this testimony.  "[The appellant] failed to plead sufficient facts in support of this claim to satisfy the requirements of Rule 32.3 and Rule 32.6(b)." Mashburn v. State, 148 So. 3d at 1143.

Third, Newton pleaded that trial counsel failed to contact four potential witnesses.  However, his amended petition did no more than merely identify those potential witnesses by name.  The petition did not identify who the witnesses were in relation to the case, did not indicate

whether those witnesses were available to testify at trial, and did not plead what those witnesses would have testified to at Newton's trial. Nor did Newton plead how he was prejudiced by counsel's failure to call the named witnesses. As this Court has repeatedly stated: "'A claim of failure to call witnesses is deficient if it does not show what the witnesses would have testified to and how that testimony might have changed the outcome.'" Woodward v. State, 276 So. 3d at 779, quoting Thomas v. State, 766 So. 2d 860, 893 (Ala. Crim. App. 1998).

The postconviction court properly found that this claim was due to be dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P. Therefore, Newton is due no relief on this claim.

4.

Newton next argues that his trial counsel's performance was ineffective because trial counsel failed to request jury instructions on the lesser-included offense of felony murder.

In his amended petition, Newton pleaded:

"If the jury doubted Alexander's credibility as to the events that led to the victim's death, there was a plausible theory that Newton participated in the robbery, but that the victim was killed by Alexander or another participant in the offense and that Newton did not intend for the victim to be killed. Due to the lack of evidence, other than Alexander's

37

testimony, that established Newton's intent -- including the complete lack of physical evidence -- in addition to the unexplained evidence that suggested the victim had been stabbed, Alexander's version of events [was], at best, incomplete."

(C. 403-404.)

When dismissing this claim, the postconviction court stated, in part:

"Newton fails to plead facts that show he was entitled to the jury instructions or that reasonable counsel would have requested the instruction, but setting that aside, a review of the trial transcript reveals that this claim is without merit. There was no factual basis for a lesser-included jury charge on felony murder. ... The evidence presented established Newton's intentional actions inflicting injury and delivering the coup de grace by gunshot to the head. There was no basis for a lesser-included felony murder charge because the facts did not support such a charge, thus trial counsel could not be ineffective for not requesting a meritless instruction."

(C. 573-74.)

When considering whether instructions on felony murder are warranted, this Court has stated:

"Lesser included offense instructions should be given when there is a 'reasonable theory from the evidence' supporting such an instruction. Jenkins [v. State, 627 So. 2d 1034 (Ala. Cr. App. 1992)]. Here, there was no reasonable theory to support a charge on felony-murder. '"The purpose of the felony-murder doctrine is to hold felons accountable for unintended deaths caused by their dangerous conduct."' White v. State, 587 So. 2d 1218, 1231 (Ala. Cr. App. 1990),

38

aff'd, 587 So. 2d 1236 (Ala. 1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992). Here, the evidence did not show that the shootings were unintended. The court did not err in not instructing the jury on the lesser included offense of felony -- murder."

Dobyne v. State, 672 So. 2d 1319, 1345 (Ala. Crim. App. 1994).

"There was no reasonable basis to charge the jury on the lesser offense of felony murder. The crime of felony murder is reserved for those situations where an unintended death occurs as a result of a defendant's dangerous conduct. Here, the manner of the killing -- shooting Phillips in the back of the head at point-blank range -- showed that the murder was intentional. The circuit court did not err in failing to instruct the jury on felony murder. See Dunaway v. State, 746 So. 2d 1021 (Ala. Crim. App. 1998), aff'd, 746 So. 2d 1042 (Ala. 1999)."

Calhoun v. State, 932 So. 2d 923, 969-70 (Ala. Crim. App. 2005).

Newton pleaded no facts that would establish that the murder was unintended. He merely pleaded that the jury could have believed that the version of how Whatley was killed was inaccurate, that Whatley had been stabbed, and that Alexander had a knife with her at the time of the murder. The trial record shows that the coroner, Dr. James Downs, testified that Whatley's body was burned and that his skull was fractured. Whatley had a gunshot wound to the back of his head, Dr. Downs said, and it was his opinion that Whatley died of that wound. (Trial Record, R. 891.) Dr. Downs also testified that Whatley had a

39

wound on his neck.  Defense counsel asked if that wound could have been caused by being stabbed with a knife.  Dr. Downs's answered: "They were very superficial, and no blood of note was associated with them."  (Trial Record, R. 898.)  No facts in the record suggested that the murder was an unintended act.  Based on the record, there was no rational basis for a jury instruction on felony murder.  "Under Strickland [v. Washington, 466 U.S. 668 (1984),] where a jury instruction on a lesser included offense is not supported by the evidence, counsel is not ineffective for failing to request the instruction."  Arce v. State, 530 P. 3d 472, 482 (Okla. Crim. App. 2023).

Also, the record shows that a lengthy charge conference was held, and that defense counsel requested 20 different instructions.  (Trial Record, R. 904-36; C. 440-465.)  Defense counsel also requested that the circuit court give an instruction on the lesser included offense of murder. (Trial Record, R. 948.)  The circuit court indicated that it would give instructions on capital murder, murder, arson, and theft of property. (Trial Record, R. 949-50.)

For the above reasons, we agree with the postconviction court that this claim was insufficiently pleaded pursuant to Rule 32.6(b), Ala. R. Crim. P. Thus, Newton is due no relief on this claim.

5.

Newton next argues that the postconviction court erred in dismissing his claim that his trial counsel was ineffective for failing to object to testimony concerning Newton's prior bad acts. Specifically, he argues that counsel was ineffective for failing to object when Alexander testified that Newton mentioned during the robbery/murder that he had just gotten out of prison and that he was not going back to prison.

When dismissing this claim, the postconviction court stated:

"Newton fails to plead why no reasonable attorney would have failed to object to this testimony, this claim is clearly without merit. In this case, [Newton's] statement that they are 'not going back to prison' is relevant, Rule 402, Ala. R. Evid., is not objectionable to on the basis of hearsay, Rule 801(d)(2)(a), nor does it fall under the prohibition against character evidence. Rule 404, Ala. R. Crim. It is clearly admissible for purposes of showing 'proof of motive, opportunity, intent, plan, knowledge … or absence of mistake or accident.' Rule 404(b)(2). The State is always permitted to prove motive. … Counsel cannot be held ineffective for failing to object to admissible evidence."

(C. 574.)

The trial record shows that before trial, defense counsel moved that the circuit court enter an order directing the District Attorney's Office to identify the "'other acts' evidence it intended to use at trial." (Trial Record, C. 15.) This motion was granted. (Trial Record, C. 71.) During Alexanders's testimony she said that Newton pointed a gun at her and Whatley. She testified:

> "[Whatley] told [Newton] he didn't have to hurt him. He would give him anything. I told him, I said, you ain't got to hurt him. I said, he'll give you anything you want. [Newton] said, naw, I ain't fixing to let this nigger live. [Newton] said, I ain't fixing to let him live. [Newton] said, I just got out of prison. I ain't fixing to go back."

(Trial Record, R. 711.)

Alexander's statement as to what Newton said during the robbery/murder was admissible. It was relevant to establish Newton's motive for killing Whatley because Whatley could identify him, and he was not going back to prison. Evidence that tends to show motive is admissible. See Revis v. State, 101 So. 3d 247, 280 (Ala. Crim. App. 2011). "[C]ounsel could not be ineffective for failing to raise a baseless objection." Bearden v. State, 825 So. 2d 868, 872 (Ala. Crim. App. 2001). For these reasons, Newton's claim was correctly dismissed. Thus, Newton is due no relief on this claim.

42

6.

Newton next argues that the postconviction court erred in dismissing his claim that the State violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to timely disclose that Macon County Deputy Sheriff Darryl Rock had taken an inculpatory statement from Joe Henry. As stated above, Henry told Deputy Rock that another person told him that the murder had been committed by Alexander and her brother.[9] Newton further asserts that the State failed to timely disclose that Deputy Rock had been indicted for theft by deception by a Macon County grand jury. Newton's argument in his brief on appeal consists of four paragraphs and only states that the State failed to explain the late disclosure.

When dismissing this claim, the postconviction court stated:

"These claims are procedurally barred, insufficiently pleaded, and meritless. In order to prevail, Newton must plead facts amounting to state suppression of exculpatory information that would have altered the outcome of the trial. … Instead, Newton pleads both that he was provided notice of the statement and received a three-year continuance and that he was notified of the deputy's indictment weeks prior to trial and that the deputy did not testify at trial. Further, a review of the AlaCourt file and specifically the Motion to Continue filed on September 9, 2022, reveals the complained-of-statement is double and triple hearsay. This claim is procedurally barred because it could have been raised at trial

---

[9]Deputy Rock did not testify at Newton's trial.

43

but was not. This claim is insufficiently pleaded because Newton failed to plead either suppression or prejudice. This claim is without merit because Newton pleaded facts contrary to suppression and prejudice."

(C. 575.) Newton failed to plead how he was prejudiced by any untimely disclosure of Henry's statement and Deputy Rock's indictment.

First, this Court has held that a <u>Brady</u> claim may be procedurally barred in a postconviction proceeding.

"[T]he circuit court correctly ruled that Boyd's <u>Brady [v. Maryland</u>, 373 U.S. 83 (1963),] claim is procedurally barred. Boyd did not assert in his petition that the claim was based on newly discovered evidence or that any alleged suppression by the State continued until such time as the claim could not have been raised at Boyd's trial. Therefore, the circuit court correctly found the claim to be procedurally barred under Rule 32.2(a)(3), Ala. R. Crim. P., because it could have been raised at trial, but was not. Moreover, the claim is procedurally barred under Rule 32.2(a)(5), Ala. R. Crim. P., because it could have been raised on direct appeal, but was not. See <u>Williams v. State</u>, 782 So. 2d 811, 818 (Ala. Crim. App. 2000) (finding an alleged <u>Brady</u> violation to be subject to procedural bars of Rule 32.2(a), Ala. R. Crim. P.). See also, e.g., <u>Boyd v. State</u>, 746 So. 2d 364, 408 (Ala. Crim. App. 1999)."

<u>Boyd v. State</u>, 913 So. 2d at 1142.

This claim is procedurally barred because it could have been raised at trial.

"[A]lthough McWhorter does not have to prove that his <u>Brady [v. Maryland</u>, 373 U.S. 83 (1963),] claim is based on 'newly discovered material facts' as defined under Rule 32.1(e)(1)-(5),

44

he must still plead facts indicating that his claim could not have been raised at trial or on direct appeal to avoid being procedurally barred under Rule 32.2(a)(3) and 32.2(a)(5). This requires McWhorter to plead that the State's alleged concealment of Rice's statement 'was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.' [Ex parte] Pierce, 851 So. 2d [606] at 616 [(Ala. 2000)]. See also Hunt [v. State, 940 So. 2d 1041 (Ala. Crim. App. 2005)], Boyd v. State, 913 So. 2d 1113 (Ala. Crim. App. 2003), and Windsor v. State, 89 So. 3d 805 (Ala. Crim. App. 2009)."

McWhorter v. State, 142 So. 3d 1195, 1261 (Ala. Crim. App. 2011). As Newton freely admits in his petition, Henry's statement was known well before trial. Pursuant to McWhorter this claim is procedurally barred in this proceeding because it could have been raised at trial.

Moreover, it is rare that a claim of untimely discovery disclosure results in reversible error. "Tardy disclosure of Brady material is generally not reversible error unless the defendant can show that he was denied a fair trial." Coral v. State, 628 So. 2d 954, 979 (Ala. Crim. App. 1992). In this case, the record shows that defense counsel had been given Henry's statement almost three years before Newton was tried. Moreover, Newton pleaded that "weeks before the eventual trial" he was notified that Deputy Rock had been indicted by a Macon County grand jury. (C. 406.) Certainly, based on these facts, Newton did not, and could

45

not, plead how he was prejudiced by the untimely disclosure. Thus, this claim was also insufficiently pleaded as he failed to plead the full facts in support of the claim. See Rule 32.6(b), Ala. R. Crim. P. For these reasons, Newton is due no relief on this claim.

7.

Newton next argues that the postconviction court erred in dismissing his claim that the State violated Giglio v. United States, 405 U.S. 150 (1972), and Napue v. Illinois, 360 U.S. 264 (1959), by failing to disclose the entire terms of his codefendant Alexander's plea agreement with the State.

In his amended postconviction petition, Newton pleaded:

"On August 20, 2022, the State entered into a plea agreement with Newton's codefendant, Chaundra Johnson (Alexander). At Newton's trial the State called Alexander to testify against him. On cross-examination, Alexander acknowledged she accepted a plea agreement in 2002 for a life with the possibility of parole sentence and prospective trial testimony against Newton. Alexander thus reduced her capital murder charge to parole eligibility beginning in 2025.

"The State has neither disclosed the entire terms of Alexander's plea deal with respect to her testimony against Newton nor the extent of its instruction to Alexander regarding her trial testimony. Further, the State failed to correct her false statements during her trial testimony."

(C. 408.)

When dismissing this claim, the postconviction court stated:

"This claim is insufficiently pleaded and refuted by the record. Newton's trial counsel was present at the plea, and Newton pleaded that trial counsel cross-examined the codefendant on the terms of the plea. Newton failed to plead what was not revealed about the deal and failed to plead any specific facts regarding false testimony given at Newton's trial, or how any of this individually or collectively would have altered the outcome of the trial."

(C. 575.)

Newton failed to plead the "entire terms" of Alexander's plea agreement with the State or that the terms of her plea agreement were any different from those that she testified to at Newton's trial. Indeed, Newton pleads nothing to suggest that the full terms of that plea were not disclosed to defense counsel. Furthermore, defense counsel was present at Alexander's plea hearing and was personally aware of the terms of the plea agreement. (C. 575.) Last, Newton failed to plead how he was prejudiced. Thus, Newton failed to plead full facts in support of this claim and summary dismissal was proper. Accordingly, Newton is due no relief on this claim.

### 8.

Newton next argues that the postconviction court erred in dismissing his claim that his trial counsel was ineffective for failing to

47

secure the services of an independent forensic pathologist. Specifically, he asserts that this claim was sufficiently pleaded, and it was error for the postconviction court to dismiss this claim.

In his amended postconviction petition, Newton pleaded that his trial counsel failed to secure the testimony of a forensic pathologist to counter the testimony of Dr. James Downs concerning the cause of Whatley's death. Newton further pleaded that a forensic pathologist, Dr. Terri Haddix, was available to evaluate the evidence and testify at Newton's trial.

In dismissing this claim, the postconviction court stated:

"This claim is insufficiently plead. While Newton does state that Dr. Terri Haddix was 'available to consult and opine' on the case, he fails to plead what that consultation or opinion would have been, or for that matter what it currently would be, and likewise, fails to name the test(s) necessary to counter the state's expert. Merely naming a witness located some 15 years post-trial is simply insufficient in a postconviction proceeding. Newton must proffer the testimony that would have been elicited and how that might have changed the outcome of the case, which he did not do."

(C. 576.) The postconviction court's findings are consistent with well established Alabama law.

For a claim concerning the failure to call an expert to satisfy the full-fact pleading requirements of Rule 32.6, Ala. R. Crim. P., the

48

petitioner must do more than merely plead the name of an expert who could have testified. He must also plead the content of the expert's expected testimony. As this Court has stated:

> "Daniel failed to identify, by name, any forensic or DNA expert who could have testified at Daniel's trial or the content of the expert's expected testimony. Accordingly, Daniel failed to comply with the full fact pleading requirements of Rule 32.6, Ala. R. Crim. P. See McNabb v. State, 991 So. 2d 313 (Ala. Crim. App. 2007) (claim that counsel was ineffective for failing to retain an expert not sufficiently pleaded because expert was not identified); Woods v. State, 957 So. 2d 492 (Ala. Crim. App. 2004), rev'd on other grounds, 957 So. 2d 533 (Ala. 2006) (claim of ineffective assistance of counsel not sufficiently pleaded because Woods failed to identify an expert by name)."

Daniel v. State, 86 So. 3d 405, 425-26 (Ala. Crim. App. 2011). Newton failed to plead the content of the expert's expected testimony.

> Moreover,

> "The decision of how to deal with the presentation of an expert witness by the opposing side, including whether to present counter expert testimony, to rely upon cross-examination, to forgo cross-examination and/or to forgo development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim."

Thomas v. State, 284 Ga. 647, 650, 670 S.E.2d 421, 425 (2008).

In this case, Dr. Downs testified that he had personally conducted more than 4,000 autopsies and had participated in more than 15,000

49

autopsies. Dr. Downs testified that Whatley's body was burned and that he had a bullet wound to his head. It was Dr. Downs's opinion that Whatley died from that bullet. Given Dr. Down's extensive experience, it would have been reasonable for counsel to choose not to retain a separate expert but instead to rely on cross-examination of the State's expert.

This claim was properly summarily dismissed because Newton failed to plead the full facts in support of the claim. See Rule 32.6(b), Ala. R. Crim. P. Therefore, Newton is due no relief on this claim.

9.

Newton next argues that the postconviction court erred in dismissing his claim that his trial counsel was ineffective for failing to secure the services of an independent investigator to conduct crime-scene reconstruction.

In his amended petition, Newton pleaded that "competent defense required the involvement of a fact investigator to assess the physical and other evidence and reconstruct the murder crime scene." (C. 411.) Newton also pleaded that a forensic investigator, R. Robert Tressel, was available and could have been engaged for Newton's trial.

50

When dismissing this claim, the postconviction court stated:

"This claim is insufficiently pleaded. Newton pleads the conclusory statement that 'no meaningful steps were taken to prepare to counter' the State's case and that R. Robert Tressel 'was and remains available' to evaluate the evidence.' Newton fails to plead what 'meaningful steps' are or how that would change the outcome of the case and fails to proffer the testimony that would have been elicited and how that might have changed the outcome of the case."

(C. 576.) As the court correctly noted, Newton failed to plead what the expert could have testified to and how he was prejudiced by counsel's failure to secure the services of an accident-scene reconstructionist. Thus, Newton failed to plead the full facts in support of this claim.

"A petitioner's postconviction claims that his or her defense counsel was ineffective in failing to investigate possible defenses are too speculative to warrant relief if the petitioner fails to allege what exculpatory evidence the investigation would have procured and how it would have affected the outcome of the case. The district court correctly concluded that Newman's conclusory allegations about the failure to hire a crime scene investigator did not warrant an evidentiary hearing."

State v. Newman, 300 Neb. 770, 792, 916 N.W.2d 393, 412 (2018).

Moreover, "There is no per se rule that requires trial attorneys to seek out an expert." Woodward v. State, 276 So. 3d at 763 (citations omitted). "'[T]he State could always call its own witness to offer a contrasting opinion.' Marshall v. State, 20 So. 3d 830, 841 (Ala. Crim.

51

App. 2008) (quoting, <u>People v. Hamilton</u>, 361 Ill. App. 3d 836, 847, 297 Ill. Dec. 673, 683, 838 N.E.2d 160, 170 (2005))." <u>Stanley v. State</u>, 335 So. 3d at 32).

We agree with the postconviction court that this claim was due to be summarily dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P., because Newton failed to plead the full facts in support of the claim. Thus, Newton is due no relief on this claim.

10.

Newton next argues that the postconviction court erred in dismissing his claim that he was not eligible to receive a sentence of death because he is intellectually disabled. Specifically, he argued that his death sentence violates the United States Supreme Court's holding in <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002).

The United States Supreme Court held in <u>Atkins v. Virginia</u> that it was a violation of the Eighth Amendment and that it was cruel and unusual punishment to execute a mentally retarded individual. The Supreme Court left it to the individual states to define mental retardation. The Alabama Supreme Court in <u>Ex parte Perkins</u>, 851 So.2d 453, 456 (Ala. 2002), held that to be considered mentally retarded for a

death sentence to be barred under <u>Atkins</u>, the defendant must show: (1) significant subaverage intellectual functioning or an **IQ** of 70 or below; (2) significant or substantial deficits in adaptive behavior; and (3) that these problems manifested themselves during the developmental period or before the age of 18. In <u>Hall v. Florida</u>, 572 U.S. 701 (2014), the Supreme Court did not use the term "mentally retarded" but used the term "intellectual disability" in discussing its <u>Atkins</u> holding. 572 U.S. at 704.

In his amended petition, Newton pleaded that at age 13 he was held back in school, that his grades were in the lower half of his class, that Newton received treatment at age 13 for his difficulties concerning conceptual, social, and practical adaptive functioning, that at age 16 he was bludgeoned in the head, that a forensic neuropsychologist, Dr. Dale Watson, was available to perform testing on Newton, and that another expert in special education and intellectual disability, James Patton, could have evaluated Newton. Newton also pleaded: "Available school, medical, and clinical records <u>do not</u> reflect intelligence measurement of Newton in the form of a neuropsychologist test battery." (C. 414; emphasis added.)

53

In dismissing this claim, the postconviction court stated:

> "This claim is insufficiently pleaded. Newton fails to plead whether he has an IQ at or below 70 accompanied by significant defects in adaptive behavior, both of which manifested prior to the age of 18, nor does Newton plead any of these as they relate to him currently. While he again names doctors, he fails to plead the purported testimony of either or whether they were available during the dates of the 2006 trial. Merely naming a witness located some 15 years post-trial is simply insufficient in a postconviction proceedings."

(C. 576-77.)

We agree with the postconviction court that Newton failed to plead the full facts that would support application of the <u>Atkins</u> and <u>Perkins</u> factors. Indeed, the major portion of this pleading is based on speculation concerning what tests might reveal concerning Newton's mental capacity. Most importantly, Newton failed to plead Newton's IQ.

The United States Court of Appeals for the Eleventh Circuit has considered the validity of the denial of a habeas corpus petition in which an <u>Atkins</u> claim had been summarily dismissed in the Alabama Rule 32 proceedings. That Court stated:

> "In his Rule 32 petition, Powell alleged the following fact as the basis for his claim of mental retardation: 'Mr. Powell was diagnosed as mildly mentally retarded in the fifth grade by the Lake County, Illinois school system.' However, Powell did not allege in his Rule 32 petition that his IQ was or is 70 or below, which is necessary to support a finding of mental

54

retardation in Alabama. See [Ex parte] Perkins, 851 So. 2d [453] at 456 [(Ala. 2002)]. Because a finding of mental retardation to sustain an Atkins [v. Virginia, 536 U.S. 304 (2002),] claim requires both significantly subaverage intellectual functioning and significant deficits in adaptive functioning, Powell had failed to plead facts on which an Atkins claim can be based. Accordingly, we cannot say that the state court's determination of this issue was contrary to or an unreasonable application of Atkins."

Powell v. Allen, 602 F.3d 1263, 1272 (11th Cir. 2010). The same is true in this case. See Smith v. State, 71 So. 3d 12, 18 (Ala. Crim. App. 2008) ("Smith failed to meet his burden of pleading in regard to this claim" [that Atkins] barred his sentence of death because Smith failed to plead his IQ.). Newton failed to plead the factors recognized in Atkins and Perkins.

Also, the trial record shows that Newton's counsel moved for a mental examination in 2004. In that motion, he asserted that while in the Macon County jail Newton "engaged in bizarre behavior over an extended period of time." (Trial Record, C. 98.) At the conclusion of this motion, counsel urged the court to grant the motion pursuant to Rule 11, Ala. R. Crim. P., and to allow Newton to have a clinical evaluation to determine his present mental condition and his competency to stand trial. (Trial Record, C. 99.) That motion was granted, and Newton was evaluated by a clinical and forensic psychologist. (Trial Record, C. 107-

55

111.) The report completed by that doctor showed that Newton refused to fully cooperate. The report stated:

> "[Newton] showed normal eye contact and showed no unusual mannerisms, gestures, nor facial expressions. For the brief time that he was interviewed, his thought productivity was normal. The structure of his thoughts was logical and relevant, although he was evasive. His speech productivity was normal with normal flow and he had expressive tone. He was coherent and comprehensible at all times during the brief evaluation. He demonstrated normal quality of affect with normal range of affective response and appropriate control of both his feelings and behaviors."

(Trial Record, C. 108-09.) The report concluded "it was evident to the examiner that [Newton] possesses the requisite ability to assist his legal counsel in his own defense and proceed with a reasonable understanding of the legal proceedings against him." (Trial Record, C. 110.)

For the foregoing reasons, this claim was correctly summarily dismissed because Newton failed to plead the full facts in support of the claim. See Rule 32.6(b), Ala. R. Crim. P. Therefore, Newton is due no relief on this claim.

## 11.

Newton next argues that the postconviction court erred in dismissing his claim that his trial counsel was ineffective because he failed to investigate and present evidence that he suffered from an

intellectual disability that barred his sentence of death pursuant to Atkins v. Virginia, supra.

Newton pleaded, in part: "Trial counsel failed to conduct a rudimentary screening of Newton including intake questions to gather basic biographical information incumbent upon capital counsel since Atkins." (C. 416.)

When dismissing this claim, the postconviction court stated:

> "This claim is insufficiently pleaded. Newton fails to plead what rudimentary testing should have been done, what it would have shown, or even how that testing would have been more revealing than the postconviction review of 'available school, medical, and clinical records.' While he does name two doctors, he fails to plead the purported testimony of either or how that might have changed the outcome of the case. Merely naming a witness located some 15 years post-trial is simply insufficient in a postconviction proceeding."

(C. 577.) We agree with the postconviction court that Newton failed to plead the full facts in support of this claim. Counsel did not plead what investigation that counsel should have conducted that would make that investigation adequate. Furthermore, though Newton named experts he did not plead those experts' expected testimony. In fact, as stated above, Newton did not plead his IQ.

The record also shows that trial counsel filed numerous motions requesting documents related to Newton. Indeed, the month after counsel was appointed, he filed a motion for discovery pursuant to Ex parte Monk, 557 So. 2d 832 (Ala. 1989), which required that the State maintain an "open file" discovery because Newton had been charged with capital murder. (Trial Record, C. 11-13.) In that motion, counsel requested copies of all "law enforcement, forensic departments, and district attorney's records" related to Newton and his codefendant. (Trial Record, C. 12-13.) Counsel then filed an extensive motion for production of all documents related to Newton and the case. (Trial Record, C. 17-23.) Counsel moved to "facilitate access to defendant's department of correction's records." (Trial Record, C. 69.) Counsel moved to continue the trial when he was given notice of Henry's statement. (Trial Record, C. 77.) Counsel moved for a mental examination to determine Newton's competency to stand trial. (Trial Record, C. 98-99.) Counsel also presented the testimony of two of Newton's family members at the penalty phase.

Based on the above, we agree with the postconviction court that this claim was due to be summarily dismissed as Newton failed to plead the

full facts. See Rule 32.6(b), Ala. R. Crim. P. Therefore, Newton is due no relief on this claim.

12.

Newton next argues that the postconviction-court erred in dismissing his claim that his trial counsel was ineffective for failing to present evidence of his fetal alcohol exposure.

In pleading this claim, Newton stated: "Competent trial representation would have observed the plain physical indicators for Newton that [fetal alcohol syndrome] was a very likely issue." (C. 420.) In essence, Newton states that his trial counsel should have recognized that Newton suffered from fetal alcohol exposure based on his physical appearance.

When dismissing this claim the postconviction court stated:

> "This claim is speculative and insufficiently pleaded. Newton fails to plead that he is afflicted with Fetal Alcohol Syndrome [FAS], why trial counsel should have doubted the malingering indication from the Rule 11[, Ala. R. Crim. P.] report, what specific testing should have been done, what it would have shown by those tests, what witnesses would have testified to the basis for the FAS inquiry, what the testimony of any of the three doctors would have shown, or whether any of the witnesses were available to testify during the dates of the 2006 trial."

(C. 577.) Newton failed to plead that he has fetal alcohol syndrome. He merely pleaded that counsel should have recognized that he might have fetal alcohol syndrome because he exhibited some of the physical signs.

In a similar case, this Court stated:

"McMillan's entire pleading on this claim is based on speculation. McMillan did not plead in either his original petition or his amended petition that he actually suffered from fetal alcohol syndrome or that he had been diagnosed with traumatic brain injury. Indeed, the entire argument is premised on the fact that counsel 'should have investigated' and 'might have found' that McMillan suffered from those conditions. '[B]y presenting pure speculation and failing to plead any specific facts regarding [this issue] ... [the appellant] failed to plead facts supporting a general claim of prejudice.' Morris v. State, [261 So. 3d 1181, 1192] (Ala. Crim. App. 2016). 'Ineffective assistance of counsel claims are not built on retrospective speculation ....' Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). 'It is well established that, in a claim of ineffective assistance of counsel, "[m]ere conjecture and speculation are not enough to support a showing of prejudice."' Elsey v. Commissioner of Corr., 126 Conn. App. 144, 166, 10 A.3d 578, 593 (2011) (citation omitted). This circuit court properly dismissed this claim because no material issue of law or fact exists that would entitle McMillan to relief. See Rule 32.7(d), Ala. R. Crim. P."

McMillan v. State, 258 So. 3d 1154, 1178-79 (Ala. Crim. App. 2017).

Moreover, we question the statements of postconviction counsel concerning trial counsel's failure to recognize the physical signs of fetal alcohol syndrome. As one court has noted:

"[A]s this Court has recently noted in another capital habeas case, as of the date of petitioner's capital murder trial, i.e., 2002, 'fetal alcohol syndrome' and 'fetal alcohol effects' were terms only just beginning to find acceptance among the mainstream within the mental health community. Sells v. Thaler, [Civil No. 5A-08-CA-06], (W. D. Tex. June 28, 2012) [memorandum opinion not reported in the Federal Supplement]. Neither term appears in the 2000 edition of the DSM-IV-TR.197. Moreover, in her report and affidavit, Dr. Murphey states '[p]hysical features associated with severe manifestations of this condition are uncertain.' Thus, it is far from clear how petitioner's trial counsel can be faulted for failing to themselves identify any signs of Fetal Alcohol Syndrome or Fetal Alcohol Effects which petitioner might have allegedly displayed prior to trial."

Garza v. Thaler, 909 F. Supp. 2d 578, 647 (W.D. Tex. 2012).

The postconviction court did not err in summarily dismissing this claim pursuant to Rule 32.6(b), Ala. R. Crim. P. Thus, Newton is due no relief on this claim.

13.

Newton next argues that the postconviction court erred in dismissing his claim that his trial counsel was ineffective for failing to present evidence of Newton's brain damage and its effect on his intellectual capacity.

Newton pleaded, in part:

"First, this childhood injury calls for a physician with research interest in traumatic brain jury to evaluate the

61

available records and examine Newton. Upon such evaluation, a qualified neurologist would be able to advise whether to prescribe brain imaging to permit visual and quantitative date analysis of the effected regions of Newton's brain."

(C. 425.) Newton further pleaded that at the time of Newton's trial Dr. Pamela Blake, a neurologist, was available to evaluate him and that Dr. Ruben Gur, a professor of psychiatry, radiology, and neurology, was also available to review the tests conducted by Dr. Blake.

When summarily dismissing this claim, the postconviction court stated:

"This claim is speculative and insufficiently pleaded. Newton does not plead that he suffers cognitive defects, why trial counsel should have discounted the Rule 11[, Ala. R. Crim. P.,] report, what specific testing should have been done, what it would have shown by those tests, what witnesses testified to the basis for the [traumatic brain injury] inquiry, what the testimony of the doctors would have shown or how the outcome would have been different."

(C. 578.) Newton failed to plead that he has been diagnosed with traumatic brain injury. The pleadings are based on speculation, i.e., what might be discovered if further tests were to be conducted on Newton. Therefore, Newton failed to comply with Rule 32.6(b), Ala. R. Crim. P., and summary dismissal was proper. Accordingly, Newton is due no relief on this claim.

62

14.

Newton next argues that the postconviction court erred in dismissing his claim that his counsel was ineffective because he failed to prepare and present extensive mitigation evidence.

The postconviction court stated the following when dismissing this claim:

> "This claim is insufficiently pleaded in its remainder. While the pleading paints a horrible picture, it does so by fiat. These claims are unsupported by clear facts attested to by a named witness(es) capable of introducing specific testimony into evidence, fails to establish the availability of witness(es) during the dates of trial, fails to plead that Newton is actually afflicted with any stress or adjustment disorders, and further fails to plead what additional steps trial counsel should have taken.'"

(C. 578-79.)

Newton's pleadings consist of a narrative about Newton's life. Newton did not identify any specific witness who could have testified to the facts in the narrative, nor did he plead how any of the evidence could have been presented at the penalty phase. He failed to plead the full facts in support of this claim. As we have stated:

> "To sufficiently plead a claim that counsel was ineffective for not calling witnesses, a Rule 32 petitioner is required to identify the names of the witnesses, to plead with specificity what admissible testimony those witnesses would

have provided had they been called to testify, and to allege facts indicating that had the witnesses testified there is a reasonable probability that the outcome of the proceeding would have been different."

Mashburn v. State, 148 So.3d at 1151.

"As with Boyd's previous claims of ineffective assistance of counsel, his claim in this regard does not provide a 'clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds.' Rule 32.6(b), Ala. R. Crim. P. (Emphasis added.)   As the circuit correctly found, Boyd's petition does not suggest a specific alternate defense that his counsel should have pursued during the penalty phase of the trial; does not disclose a particular mitigating factor that would have been revealed had counsel investigated and prepared for the penalty phase in some other manner; and does not disclose the substance of the expected testimony of any of the potential mitigation witnesses whom counsel allegedly failed to interview.   Thus, the circuit court correctly ruled that the claim had not been sufficiently pleaded."

Boyd v. State, 913 So. 2d at 1138-39.

"'"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989).' Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993).   As the circuit court stated, White failed to plead what any further investigation would have revealed.  'Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b).  The full factual basis must be included in the petition itself.' Hyde v. State, 950 So. 2d [344] at 356 [(Ala. Crim. App. 2006)]."

White v. State, 343 So. 3d 1150, 1170 (Ala. Crim. App. 2019).

64

The record also shows that at the sentence hearing, defense counsel presented the testimony of two witnesses -- one of Newton's sisters, Anita Newton, and Newton's father, Arthur Lee Newton. Anita testified that she is one of five siblings, that her mother beat them, that her stepfather abused them and beat them, that her mother would lock them in a closet, and that her mother beat them with an extension cord. (Trial Record, R. 1082.) Arthur Newton testified that he divorced Newton's mother when she was pregnant with their youngest child, that Newton was about seven years old when his mother remarried, and that Newton's stepfather told him to have no contact with any of the children. (Trial Record, R. 1094.)

In the penalty phase, trial counsel also attempted to introduce various documents concerning Newton's upbringing. However, the circuit court would not allow those documents to be admitted. On direct appeal, this Court addressed the claim as follows:

> "Newton's second argument is that the trial court improperly excluded evidence about 'the bad circumstances of [his] upbringing.' (Newton's brief at p. 17.) Specifically, he contends that the trial court improperly excluded 'documentary evidence supporting the defense contention that [he] had grown up in a household filled with acts of violence and other criminal acts by his step-father.' (Newton's brief at p. 20.)

"During the penalty phase of the trial, Anita Newton, Newton's sister, testified that she had two younger brothers and two younger sisters, that she did not remember her father being in the household, and that her mother remarried Arnold Brown. She also testified that Brown "used to take his penis out and walk around the house holding it, and he made a pass at me more than once," and that Newton was exposed to those things. (R. 1085.) Anita further testified that Brown whipped them a lot on their behinds and their hands with an extension cord. She also testified that Brown and their mother fought and hit each other. Finally, she testified that they did not have any contact with their real father while they were growing up and that Brown did not even like for them to talk about him.

"After Anita testified, in an effort to corroborate her testimony, the defense sought to admit a divorce decree for Newton's mother and Brown and a report from the Alabama Board of Pardons and Paroles that showed the various offenses Brown had committed. The State objected to the admission of the documents, arguing that Anita's credibility had not been attacked and that, although one exhibit showed that Brown had been convicted of indecent exposure, it did not show that it involved Anita or Newton. The trial court sustained the State's objection.

"....

"In this case, much of the information that was included in the excluded documentation was not relevant and could have resulted in a confusion of the issues for the jury. Also, the information that was relevant was merely cumulative to testimony by Anita that had not been disputed by the State. Finally, in its sentencing order, the trial court found that certain facts about which Anita testified constituted nonstatutory mitigation. Under these circumstances, we do

66

not find that the trial court erred to reversal in excluding the documents the defense sought to introduce."

Newton v. State, 78 So. 3d at 464-65. This is clearly not a case where defense counsel conducted no investigation. Some mitigation evidence was presented at Newton's penalty hearing.

> "As an initial matter, we 'must recognize that trial counsel is afforded broad authority in determining what evidence will be offered in mitigation.' State v. Frazier (1991), 61 Ohio St.3d 247, 255, 574 N.E.2d 483. We also reiterate that post-conviction proceedings were designed to redress denials or infringements of basic constitutional rights and were not intended as an avenue for simply retrying the case. Laugesen [Laugesen] v. State, [(1967), 11 Ohio Misc. 10, 227 N.E.2d 663] supra; State v. Lott, [(Nov. 3, 1994), Cuyahoga App. Nos. 66388, 66389, 66390] supra. Further, the failure to present evidence which is merely cumulative to that which was presented at trial is, generally speaking, not indicative of ineffective assistance of trial counsel. State v. Combs (1994), 100 Ohio App.3d 90, 105, 652 N.E.2d 205."

Jells v. Mitchell, 538 F.3d 478, 489 (6th Cir. 2008). "The decision of what mitigating evidence to present during the penalty phase of a capital case is generally a matter of trial strategy." Hill v. Mitchell, 400 F.3d 308, 331 (6th Cir. 2005).

We agree with the postconviction court that this claim was not sufficiently pleaded to survive Rule 32.6(b), Ala. R. Crim. P. Thus, summary dismissal was proper, and Newton is due no relief on this claim.

B.

Newton next argues that the postconviction court erred in finding that two of his claims were procedurally barred in his postconviction proceedings.

As we have previously stated, the procedural bars of Rule 32, Ala. R. Crim. P., apply with "equal force" to all cases even those involving the death penalty. See Burgess v. State, 962 So. 2d 272, 277 (Ala. Crim. App. 2005); Boyd v. State, 764 So. at 374; State v. Tarver, 629 So. 2d 14, 19 (Ala. Crim. App. 1993).

1.

Newton argues that the postconviction court erred in finding that his claim that his sentence of death was barred by Hurst v. Florida, 577 U.S. 92 (2016), was procedurally barred in this postconviction proceeding.

In finding that this claim was barred, the postconviction court stated: "This claim is procedurally barred because it was raised on direct appeal. … It is further without merit even in light of Hurst v. Florida, 577 U.S. 92 (2016), as the jury necessarily found Newton committed one aggravator." (C. 579.)

In 2000, the United States Supreme Court released its decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), and held that any fact that increases a penalty above the statutory maximum must be presented to a jury and proven beyond a reasonable doubt. Two years later, in 2002, that Court released its decision in Ring v. Arizona, 536 U.S. 584 (2002), and applied its holding in Apprendi to capital-murder cases. In Hurst, the United States Supreme Court

> "[a]pplied its holding in Ring [v. Arizona, 536 U.S. 584 (2002),] to Florida's capital-sentencing scheme and held that Florida's capital-sentencing scheme was unconstitutional because, under that scheme, the trial judge, not the jury, made the 'findings necessary to impose the death penalty.' [Hurst v. Florida,] 577 U.S. [92], 136 S.Ct. at 622 [(2016)]. Specifically, the Court held that Florida's capital-sentencing scheme violated the Sixth Amendment right to a trial by jury because the judge, not the jury, found the existence of the aggravating circumstance that made Hurst death eligible."

Ex parte Bohannon, 222 So. 3d 525, 531 (Ala. 2016).

We note that Newton was tried in 2006, 10 years before the United States Supreme Court released its decision in Hurst. Nonetheless, the record shows that in February 2002, defense counsel moved that Newton's indictment be dismissed based on the recent United States Supreme Court's decision in Apprendi. He argued:

69

"Defendant Newton contends that the United States Constitution and <u>Apprendi [v. New Jersey</u>, 530 U.S. 466 (2000),] require that a jury finally determine beyond a reasonable doubt the existence of aggravating circumstances, their relative weight compared to mitigating circumstances, and the appropriate sentence in all capital cases. Because the Alabama death penalty scheme does not provide for such, it is unconstitutional."

(Trial Record, C. 26-28.) After the United States Supreme Court released its decision in <u>Ring v. Arizona</u>, in 2002, Newton's trial counsel filed a supplement to the motion to dismiss citing the <u>Ring</u> decision. (Trial Record, C. 37-41.) The circuit court denied those motions. (Trial Record, C. 71.)

The record shows that this claim was raised at trial. Also, this claim was addressed on direct appeal.

"[B]ecause the jury convicted Newton of the capital offense of robbery-murder, that aggravating circumstance was proven beyond a reasonable doubt. Therefore, the jury, and not the judge, determined the existence of the 'aggravating circumstance necessary for imposition of the death penalty.' <u>Ring v. Arizona</u>, 536 U.S. 584, 609, 122 S.Ct. 2428, 2443, 153 L.Ed.2d 556 (2002). Also, because the jury found the existence of one aggravating circumstance, Newton was exposed to or eligible for the death penalty, and '[t]he trial court's subsequent determination that the murder [was] especially heinous, atrocious, or cruel is a factor that has application only in weighing the mitigating circumstances and the aggravating circumstances.' <u>[Ex parte] Waldrop</u>, 859 So. 2d [1181] at 1190 [(Ala. 2002)]. Accordingly, there was not a <u>Ring</u>

violation in this case, and Newton's arguments to the contrary are without merit."

Newton v. State, 78 So. 3d at 471.

The circuit court correctly found that this claim was raised at trial and on direct appeal, thus, it was procedurally barred in Newton's postconviction proceedings. See Lee v. State, 244 So. 3d 998, 1003 (Ala. Crim. App. 2017) ("Lee's Ring/Hurst claim was subject to the procedural bars contained in Rule 32.2, Ala. R. Crim. P."); Smith v. State, 71 So. 3d 12, 34 (Ala. Crim. App. 2008) ("Smith's Ring claim was procedurally barred in this postconviction proceeding."). Thus, Newton is due no relief on this claim.

2.

Newton last argues that the postconviction court erred in dismissing his claim that it was a violation of his constitutional rights to sentence him to death based on a verdict in the penalty phase that was not unanimous.[10]

---

[10]"Effective April 11, 2017, §§ 13A-5-46 and -47, Ala. Code 1975, were amended by Act No. 2017-131, Ala. Acts 2017, to provide that the jury's sentencing verdict in a capital-murder trial is no longer a recommendation but, instead, is binding upon the trial court." Keaton v. State, 375 So. 3d 44, 70 n. 2 (Ala. Crim. App. 2021). These amendments

When dismissing this claim, the postconviction court stated:

"[T]his claim is procedurally barred because it was raised on direct appeal. … It is further without merit, even in light of Hurst v. Florida, 577 U.S. 92 (2016), as the jury necessarily found Newton committed one aggravator. … The unanimity requirement addressed in Thompson v. Utah, 170 U.S. 343 (1898). Overruled by Collins v. Youngblood, 497 U.S. 37 (1990), and Ramos v. Louisiana, 140 S.Ct. 1390 (2020), does not apply to the capital penalty phase. Newton is entitled to no relief on this claim."

(C. 579.)

As the State asserts in its brief, it does not appear that Newton raised this claim on direct appeal. It was raised in a motion filed by trial counsel objecting to the application of the death penalty in his case. (Trial Record, C. 482-86.) Nonetheless, the postconviction court also found that this claim had no merit.

"'"Alabama law does not require that the jury's advisory verdict be unanimous before it can recommend death,"' Thompson [v. State], 153 So. 3d [84] at 179 [(Ala. Crim. App. 2012)] (quoting Miller v. State, 913 So. 2d 1148, 1169 n.4 (Ala. Crim. App. 2004)), and Keaton cites no case from the United States Supreme Court that requires such unanimity. See State v. Poole, 297 So. 3d 487, 504 (Fla. 2020), cert. denied 592 U.S. ___, 141 S. Ct. 1051, 208 L. Ed. 2d 521 (2021) (holding that the 'requirement of a unanimous jury' for the imposition of the death penalty 'finds no support in' caselaw from the United States Supreme Court). See also Lane [v.

do not apply retroactively. At the time of Newton's trial, the jury's verdict was a recommendation.

State], 327 So. 3d [691] at 776-77 [(Ala. Crim. App. 2020)] (noting that '"both this Court and the Alabama Supreme Court have upheld death sentences imposed after the jury made a less-than-unanimous recommendation that the defendant be sentenced to death"' (quoting <u>Brownfield v. State</u>, 44 So. 3d 1, 39 (Ala. Crim. App. 2007))). Keaton's reliance on <u>Ramos v. Louisiana</u>, 590 U.S. [83], 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020), is misplaced because <u>Ramos</u> held only that the United States Constitution requires a unanimous verdict to support a conviction, not a sentence. See <u>Ruiz v. Davis</u>, 819 F. App'x 238, 246 n.9 (5th Cir. 2020) (noting that the United States Supreme Court held in Ramos that '"the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction," not a sentence' (quoting <u>Ramos</u>, 590 U.S. at [93], 140 S. Ct. at 1397))."

<u>Keaton v. State</u>, 375 So. 3d 44, 136-37 (Ala. Crim. App. 2021). "[W]hen reviewing a circuit court's rulings made in a postconviction petition, we may affirm a ruling if it is correct for any reason." <u>Bush v. State</u>, 92 So. 3d 121, 133 (Ala. Crim. App. 2009). This claim was properly denied on the merits. Thus, Newton is due no relief on this claim.

For the foregoing reasons, we affirm the postconviction court's summary dismissal of Newton's Rule 32, Ala. R. Crim. P. petition attacking his capital-murder conviction and sentence of death.

AFFIRMED.

Windom, P.J., and McCool, Cole, and Minor, JJ., concur.

73